# United States Court of Appeals

## For the First Circuit

No. 08-2115

ROBERT ESPOSITO,

Plaintiff, Appellant,

v.

HOME DEPOT U.S.A., INC., BLACK & DECKER INC.,
DEWALT INDUSTRIAL TOOL CO.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lipez and Howard, Circuit Judges,
and Woodcock,[*] District Judge.

Thomas More Dickinson, with whom Law Office of Thomas M. Dickinson was on brief, for appellant.
C. Russell Bengtson, with whom Carroll Kelly & Murphy was on brief, for appellees.

December 30, 2009

---

[*]Of the District of Maine, sitting by designation.

**HOWARD**, **Circuit Judge**.    In this diversity action involving a products liability claim, Robert Esposito challenges the district court's decision to grant summary judgment to the defendants, Dewalt Industries, Black & Decker, and Home Depot. Esposito argues on appeal that the case was improperly removed to federal court and that the district court erroneously precluded his expert witness.  We reject the argument based on improper removal, but we agree that, in the circumstances of this case, the expert witness should not have been precluded.  Accordingly, we vacate the district court's entry of summary judgment and remand for further proceedings.

## I. Facts

In March 2003, while he was operating a power saw manufactured by Dewalt Industries ("Dewalt"), Robert Esposito's left hand came into contact with the saw's unguarded blade.  The saw severed three of his fingers, none of which could be reattached.  In March 2006, Esposito filed a complaint in Rhode Island state court against Dewalt, Black & Decker (the company that packaged the saw), and Home Depot (the company that sold the saw). Esposito claimed that the saw was defective because its blade guard did not engage properly and that the defendants were jointly and severally liable for his injury.  Home Depot was served with the complaint on March 17.  The other defendants were served on March 21.

On April 3, two of the defendants, Dewalt and Black & Decker, filed a notice of removal in the United States District Court for the District of Rhode Island. On April 13, the other defendant, Home Depot, filed its answer in federal court.

On May 3, Esposito moved to remand the matter back to the state court. In support of his motion, he claimed a defect in the removal process in that Home Depot had not consented to removal within the thirty-day period as required by statute. See 28 U.S.C. § 1446(b). That failure, Esposito claimed, breached the unanimity requirement: that each defendant in a multi-defendant case consent to removal within thirty days of receiving service. The defendants opposed Esposito's motion.

The district court denied the motion, concluding that Home Depot's answer, which had been filed in federal court within the thirty day period, constituted consent to removal under the circumstances. Esposito v. Home Depot U.S.A., Inc., 436 F. Supp. 2d 343, 347 (D.R.I. 2006).

In July 2006, the district court set pre-trial discovery and disclosure deadlines, including a deadline for the written disclosure of experts under Rule 26 of the Federal Rules of Civil Procedure. These deadlines were pushed back twice: first at the request of the defendants and second at the request of Esposito. The second extension required the parties to wrap up fact discovery by May 31, 2007; Esposito to disclose experts by June 21; and the

defendants to disclose experts by July 14. Dispositive motions were due by August 16.

Operating under this revised timetable, the parties and their respective experts arranged to participate in a joint examination of the saw. At this examination, which took place on April 20, Steven Thomas inspected the saw on Esposito's behalf. Thomas's curriculum vitae had been sent to the defendants prior to this examination. When the time came to disclose Thomas as his expert, however, Esposito failed to do so. Instead, on August 1, he filed a motion requesting that the court further extend the relevant deadlines by ninety days. The defendants opposed Esposito's extension request and on August 3 they filed a summary judgment motion premised on the plaintiff's lack of an expert.

The magistrate judge denied Esposito's request for a further extension, and Esposito appealed this decision to the district court. Expressing reluctance, the district court nevertheless endorsed the magistrate judge's decision and denied Esposito's motion for an extension. The court recognized that the denial of the plaintiff's request for an extension amounted to a dispositive ruling, noting that "Both of the parties acknowledge that the decision to exclude [Esposito's] expert as a result of missing the discovery deadlines will, without much doubt, effectively dispose of the case." Nevertheless, the district court concluded that the denial of the extension, which precluded

Esposito's expert, was justified.  In so concluding, the district court noted that Esposito had failed to offer a legitimate reason for missing the deadline.  The court also expressed its concern that lesser sanctions, such as the imposition of fines and costs, might "send the message that noncompliance or inattention to deadlines can be purchased for a price."

As predicted, the district court's ruling sounded the death knell for Esposito's case.  The magistrate judge recommended that the district court grant the defendants' motion for summary judgment and the district court agreed, entering judgment for the defendants.[1]  This appeal followed.

## II.  Discussion

We first examine the removal issue, turning then to the sanction question.

### A.  Removal

Under the removal statute, a defendant in a state court action may remove the action to federal court so long as the plaintiff could have originally filed the action in federal court. See 28 U.S.C. § 1441 (permitting removal of cases where the federal court would have had "original jurisdiction").  Where the action involves multiple defendants, however, the right of removal is subject to the so-called "unanimity requirement."  See Chicago,

_____

[1] In opposing the defendants' summary judgment motion, Esposito provided and relied upon an engineering report from Thomas.  The magistrate judge struck this report.

-5-

Rock Island & Pac. Ry. Co. v. Martin, 178 U.S. 245, 247-48 (1900). This requirement is at issue in this case.

The unanimity requirement is derived from 28 U.S.C. § 1446, which sets forth the procedure for removing a state action to federal court. Loftis v. UPS, 342 F.3d 509, 516 (6th Cir. 2003). In a case where a plaintiff has sued multiple defendants in state court, an "all for one and one for all" rule applies with respect to removal. See Chicago, Rock Island & Pac. Ry. Co., 178 U.S. at 247-48. That is, subject to a few exceptions not applicable here, all defendants must consent to remove the case for removal to be effected. Id.; see also 11C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3731 (3d. ed. 1998) ("Ordinarily, all of the defendants in the state court action must consent to the removal . . . .").

The requirement of unanimity serves the interests of plaintiffs, defendants and the judiciary. Plaintiffs are advantaged, because, were the right to removal an independent rather than joint right, defendants could split the litigation, forcing a plaintiff to pursue its case in two separate forums. See Sansone v. Morton Mach. Works, Inc., 188 F. Supp. 2d 182, 184 (D.R.I. 2002) (citing Getty Oil Corp., Div. of Texaco, Inc. v. Ins. Co. of N. Am., 841 F.2d 1254, 1262 n.11 (5th Cir. 1988)). Defendants also stand to benefit from the requirement, as it precludes one defendant from imposing his choice of forum on a co-

defendant. Id. (citation omitted). And the unanimity requirement prevents the needless duplication of litigation, thereby preserving court resources and eliminating the unattractive prospect of inconsistent state and federal adjudications. Spillers v. Tillman, 959 F. Supp. 364, 369 (S.D. Miss. 1997).

The defect in the removal process resulting from a failure of unanimity is not considered to be a jurisdictional defect, and unless a party moves to remand based on this defect, the defect is waived and the action may proceed in federal court. See Loftis, 342 F.3d at 516-17; see also 11C Wright, Miller & Cooper, Federal Practice and Procedure § 3739 ("After the expiration of the thirty-day period following the filing of the removal notice, the right to object to nonjurisdictional defects in the removal process is considered waived.").

Here, Esposito timely objected to the perceived failure of the defendants to comply with the unanimity requirement. Before the district court, as he does now, Esposito argued that Home Depot failed to consent to removal within the statutorily prescribed thirty-day period. The district court rejected this argument. As noted above, it concluded that Home Depot's answer in federal court, filed within the applicable thirty day period, constituted consent to removal under the circumstances of the case. Our review of this conclusion is de novo. Loftis, 434 F.3d at 514.

Although the unanimity requirement itself is well-settled, the various ways that it may be satisfied are less so. We have not spoken directly to the question, but a number of guideposts do exist.

The removal statute itself speaks generally to the manner of removal. In relevant part, section (a) provides that:

> [A] defendant or defendants desiring to remove any civil action . . . from a State court shall file in the [appropriate] district court of the United States a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a).

Consistent with this statute, a defendant may express its desire to remove by signing the notice of removal filed by co-defendants. But, the consensus among courts is that conduct less explicit than joining the notice will suffice. See Pritchett v. Cottrell, Inc., 512 F.3d 1057, 1062 (8th Cir. 2008) ("[E]ach defendant need not necessarily sign the notice of removal.") (citation omitted); Getty Oil Corp., Div. of Texaco, Inc., 841 F.2d at 1262 n.11 ("This does not mean that each defendant must sign the original petition for removal"); see also Sansone, 188 F. Supp. 2d at 184; Tate v. Mercedes-Benz USA, Inc., 151 F. Supp. 2d 222, 224 (N.D.N.Y. 2001).

Although a few courts have gone so far as to say that a defendant may orally consent to removal before the district court, Colin v. Schmidt, 528 F. Supp. 355, 358-59 (D.R.I. 1981), Clyde v. Nat'l Data Corp., 609 F. Supp. 216, 218 (N.D. Ga. 1985), courts typically require some type of writing that evinces consent, Loftis, 342 F.3d at 517 ("[A]ll defendants in the action must join in the removal petition or file their consent to removal in writing within thirty days . . . ." (emphasis added)); see also Pritchett, 512 F.3d at 1062; Gillis v. Louisiana, 294 F.3d 755, 759 (5th Cir. 2002); Roe v. O'Donohue, 38 F.3d 298, 301 (7th Cir. 1994); Tate, 151 F. Supp. 2d at 224.

What type of writing will be satisfactory engenders yet another divergence of opinion. Some courts have held that an answer by a defendant that is silent on removal may nevertheless establish consent, while other courts have reached the opposite conclusion. Compare Hernandez v. Six Flags Magic Mountain, Inc., 688 F. Supp. 560, 562 (C.D. Cal. 1988) (holding that an answer silent on removal can establish consent), and Glover v. W.R. Grace & Co., Inc., 773 F. Supp. 964, 965 (E.D. Tex. 1991) (same), with Local Union No. 172 v. P.J. Dick, Inc., 253 F. Supp. 2d 1022, 1025 (S.D. Ohio 2003) (holding that an answer filed that fails to expressly consent to removal does not satisfy the unanimity requirement), and Unicom Sys., Inc. v. Nat'l Louis Univ., 262 F. Supp. 2d 638, 643 & n.6 (E.D. Va. 2003) (same). At least one court

has held that a defendant's answer is insufficient to establish consent to removal even where it explicitly acknowledges the removal of the case to federal court. Prod. Stamping Corp. v. Md. Cas. Co., 829 F. Supp. 1074, 1077 (E.D. Wis. 1993).

Although mindful of the principle that removal statutes are to be narrowly construed, Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941), we nevertheless are not inclined to establish a wooden rule, regardless of whether such a rule would have the benefit of promoting clarity. And in this particular case, even assuming that Home Depot's answer failed to satisfy the unanimity requirement, resulting in a technical defect in the removal process, the defect was subsequently cured when Home Depot opposed Esposito's remand motion, thereby clearly communicating its desire to be in federal court. See Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 202 (6th Cir. 2002) ("In addition, the fact that [the defendant] opposed [the plaintiff's] motion to remand cured any purported defect in the removal petition."). Because this cure occurred prior to the entry of summary judgment, a remand to the state court was not required. Cf. Caterpillar Inc. v. Lewis, 519 U.S. 61, 76 (1996); see Parrino v. FHP, Inc., 146 F.3d 699, 703 (9th Cir. 1998) (citing Caterpillar, 519 U.S. at 77, for the proposition that "a procedural defect existing at the time of removal but cured prior to entry of judgment does not warrant reversal and remand of the matter to state court").

In a case such as this one, where the parties have already invested valuable resources in pursuing this litigation in federal court and where a remand to state court would not serve the purposes of the unanimity requirement, reaching an opposite conclusion would place form before function. Parrino, 146 F.3d at 703; Glover, 773 F. Supp. at 965; 11C Wright, Miller & Cooper, Federal Practice and Procedure § 3739 ("[T]he preferable result seems to be to continue to allow procedural defects in the removal procedure be cured so the removed action can remain in federal court. A contrary conclusion does not seem consistent with the statutory character of the removal right and seems too technical."). We refuse to do so, and thus uphold the denial of the remand motion.

Of course, it is undoubtedly the better practice for a defendant who wants to be in federal court to join the removal notice explicitly, either by signing the notice itself or by filing its consent. By failing to do so in this case, Home Depot ran the risk that the district court might find a breach of the unanimity requirement and remand this action to the state court, a decision we would have been powerless to review. 28 U.S.C. § 1447(d) (a district court's order remanding a case to the state court from which it was removed is unreviewable on appeal or otherwise); Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 133 (1995);

Gonzalez-Garcia v. Williamson Dickie Mfg. Co., 99 F.3d 490, 491-92 (1st Cir. 1996).

## B. Discovery Sanction

The Federal Rules of Civil Procedure provide the basic framework for disclosure of experts. Rule 26 requires a party to "disclose to other parties the identity of any person who may be used at trial to present [expert] evidence." Fed. R. Civ. P. 26(a)(2)(A). Where a district court has established a disclosure date, as in this case, a party must disclose the expert's identity at this ordered time. Id. at (a)(2)(C). If a party's expert disclosure is untimely, the party is not allowed to use that witness or relevant expert information "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Preclusion, however, "is not a strictly mechanical exercise." Santiago-Diaz v. Laboratorio Clinico y de Referencia del Este, 456 F.3d 272, 276 (1st Cir. 2006). And, in its discretion, the district court may choose a less severe sanction. Id.; see also LaPlace-Bayard v. Batlle, 295 F.3d 157, 162 (1st Cir. 2002) ("[D]istrict courts have broad discretion in meting out . . . sanctions for Rule 26 violations.") (citation omitted).

Where a district court does opt in favor of preclusion, we review that decision with reference to a host of factors, including: (1) the history of the litigation; (2) the sanctioned

-12-

party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects -- e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket. Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003); see also Santiago-Diaz, 456 F.3d at 276-77. When reviewing the district court's sanction decision we must keep in mind that district courts are generally in a better position to determine the propriety of a particular sanction and, accordingly, our review of the district court's ultimate choice is deferential. Anas, 321 F.3d at 51 ("Because trial judges tend to have an intimate knowledge of the variables that enter into the equation, appellate review of sanctions orders is deferential.") (citations omitted); Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1082 (1st Cir. 1989). Consistent with this deference, we review a district court's decision to exclude expert evidence for an abuse of discretion, understanding that the sanctioned party shoulders a "heavy burden" when attempting to show that such an abuse has occurred. See Santiago-Diaz, 456 F.3d at 275.[2]

---

[2] We note that Rule 16 of the Federal Rules of Civil Procedure gives district courts great discretion to issue sanctions where a party fails to comply with case-management deadlines. Fed. R. Civ. P. 16(f). It is not entirely clear whether the preclusion sanction here was levied under Rule 16 or Rule 37, although Esposito cited Rule 37 in his motion to permit expert testimony. In any event,

-13-

Here, the district court was undoubtedly entitled to impose some type of sanction on Esposito. Esposito failed to comply with a court-imposed deadline that he himself had suggested, and he could not offer a legitimate justification for his non-compliance. And despite Esposito's argument that the appearance of his expert at the inspection of the saw constituted an "informal disclosure," the rules require formal disclosure for a reason: without it, parties like the defendants in this case may be hindered in their ability to prepare effectively for trial. See Fed. R. Civ. P. 26 (a)(2)(B) (establishing that, "[u]nless otherwise stipulated or ordered by the court," the formal disclosure of an expert "must be accompanied by a written report" that contains a host of information relevant to the expert's testimony).

Nevertheless, whether the facts here justified the actual sanction imposed -- the preclusion of the expert witness -- is a closer question. We start by stating the obvious. The sanction here had serious consequences. Esposito's need for the expert was so great that the magistrate judge's decision to preclude the

whether we are reviewing a sanction imposed under Rule 16 or Rule 37, the considerations are generally the same, as is the deference we afford the district court's choice of sanction. See Santiago-Diaz, 456 F.3d at 277 (discussing cases dealing with sanctions imposed under Rule 16 in examining the preclusion of evidence under Rule 37). Accordingly, we would reach the same result here under either rule.

-14-

expert, although technically not a dismissal of Esposito's case, effectively amounted to one. See Primus v. United States, 389 F.3d 231, 234 (1st Cir. 2004). The district court acknowledged as much when it affirmed the magistrate judge's imposition of the sanction, observing that "Both of the parties acknowledge that the decision to exclude the Plaintiff's expert as a result of missing the discovery deadlines will, without much doubt, effectively dispose of the case."

Because all parties acknowledged that the sanction carried the force of a dismissal, the justification for it must be comparatively more robust. Young v. Gordon 330 F.3d 76, 81 (1st Cir. 2003) ("To be sure, dismissal ordinarily should be employed as a sanction only when a plaintiff's misconduct is extreme."); Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002) (recognizing that dismissal should not be granted "casually"). After considering the other relevant factors described above, we conclude that the circumstances here do not justify such strong medicine.

In reaching this conclusion, we view the history of the litigation as particularly enlightening. This is not a case of a party repeatedly balking at court-imposed deadlines. Esposito missed one deadline and requested an extension of the pre-trial and trial dates after missing that deadline, albeit several weeks after the deadline had passed. Compare Santiago-Diaz, 456 F.3d at 277 &

n.4 (noting, in upholding the preclusion of a late-disclosed expert witness, that the sanctioned party's "dereliction was both obvious and repeated" and that "[t]he record makes manifest that the plaintiff was guilty of several discovery violations besides those related to her expert witness"). Nor is this a case where the sanctioned party ignored pre-sanction warnings from the district court. See Young, 330 F.3d at 79. Nor does this case involve, from all appearances, an act of calculated gamesmanship on the part of the sanctioned party. Neither the defendants nor the district court in this case have characterized Esposito's failure to comply with the disclosure deadline as strategic in nature.

To be sure, not every factor cuts in Esposito's favor. First, he never offered a legitimate reason for his late disclosure. See Macaulay, 321 F.3d at 52 (finding that the district court's preclusion of the expert evidence was appropriate where, among other things, "the appellant [had not] advanced any real justification for [the] tardy emergence [of the expert's report]"). Second, although the defendants here do not discuss in any great detail how the late disclosure prejudiced them, they obviously went through the pains of preparing a dispositive summary judgment motion premised on Esposito's lack of an expert in an expert-dependent case. See Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 198 (1st Cir. 2006) ("[P]rejudice also exists in [the defendants] having prepared a dispositive motion for summary

-16-

judgment predicated on the preclusion of the expert testimony."); Primus, 389 F.3d at 236. And finally, Esposito's failure to disclose his expert by the scheduled date had a clear effect on the district court's docket. In his motion to extend, Esposito sought to push back the relevant pre-trial and trial dates by ninety days, requiring the district court to further move dates that had already been extended twice.

Even taking these considerations into account, however, we still must face up to the fact that we are presented with a fatal sanction levied for a single oversight. We have not been able to uncover a case from this circuit sustaining a comparable sanction under similar circumstances. See Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 5 (1st Cir. 2006) ("Defendants do not cite to us, and we have been unable to find, a case from this circuit sustaining a dismissal with prejudice imposed solely for a single allegation of noncompliance with a single (albeit multi-part) discovery order -- at least where that non-compliance was never brought to the plaintiffs' attention by the court prior to dismissing the case."); see also Malot v. Dorado Beach Cottages Assocs., 478 F.3d 40, 44 (1st Cir. 2007) (same). In our view, a less severe remedy could have easily achieved the same aims as the preclusion of the expert while still giving Esposito, potentially the innocent victim of a defective product, his day in court. Malot, 478 F.3d at 43 (recognizing "the strong presumption in favor

of deciding cases on the merits"); Young, 330 F.3d at 81 (referencing the "salutary policy favoring the disposition of cases on the merits").

The defendants urge us to uphold the district court's sanction. They rely principally on our decisions in Tower Ventures, Inc. and Young. In both of these cases, we upheld a district court's decision to dismiss the case of a party that had failed to comply with case-management deadlines. Tower Ventures, Inc., 296 F.3d at 48; Young, 330 F.3d at 83. In each of those cases, however, the conduct of the sanctioned party was measurably more egregious than Esposito's conduct was here.

In Tower Ventures, Inc., the sanctioned party, Tower Ventures, had committed "serial violations of the court's scheduling order." 296 F.3d at 45. The violations were missed discovery deadlines, and the final one was particularly flagrant: Tower Ventures waited eighty-one days after the discovery deadline had passed, and eighteen days after its motion for summary judgment was due, to ask the court for a further extension. Id. By that time, the district court had already issued a show cause order, asking Tower Ventures why its action should not be dismissed with prejudice. Id.

In Young, the district court dismissed Young's case because of Young's "repeated failures to comply with court orders." 330 F.3d at 78. In particular, Young (i) failed to join the

opposition in filing a joint statement containing a proposed pretrial schedule as ordered by the court; (ii) did not respond to the opposition's counter-claims until the court warned him that his failure to do so could result in a dismissal; and (iii) refused to appear for his own deposition, even after the court ordered him to appear and warned him that a failure to do so could result in a dismissal of his action. Id. at 79.

Here, by contrast, Esposito missed only one court-scheduled deadline, and his behavior was not nearly as brazen as the behavior of the sanctioned parties in either of those cases. He neither engaged in the same level of foot-dragging as was present in Tower Ventures, nor sloughed off a warning from the district court like the plaintiff in Young.

We do not wish to casually discount the district court's concern that a lesser sanction, such as the imposition of fines or costs, might send a message to other litigants that "inattention to deadlines can be purchased for a price." The deterrence value of a sanction may certainty factor into a district court's calculus. But, allowing the general interest in deterrence to hold too much sway in the analysis runs afoul of the principle that "sanction[s] must be handled on a case-by-case basis." Young, 330 F.3d at 81. In other words, the punishment must approximately fit the crime. Here, it did not. In the absence of a greater conviction that parties will indeed attempt to purchase their way out of discovery

-19-

compliance as a result of our holding in this case, we are not persuaded that the sanction here was justified.

### III.  <u>Conclusion</u>

For the reasons provided above, we **<u>affirm</u>** the district court's denial of the motion to remand, but we **<u>reverse</u>** the exclusion of the expert testimony, **<u>vacate</u>** the entry of summary judgment, and **<u>remand</u>** for further proceedings consistent with this opinion, including the possible imposition of sanctions within the district court's discretion. The parties shall bear their own costs.

**-Concurring and Dissenting Opinion Follows-**

**WOODCOCK**, **District Judge**, concurring in part and dissenting in part.

I concur fully with the majority's thoughtful resolution of the removal issue. I disagree, however, with the majority's conclusion that the district judge abused his discretion by precluding Esposito's expert witness because I believe that, in reaching this conclusion, the majority has applied a higher dismissal standard to a Rule 37(c) discretionary sanction. I respectfully dissent.

## I.    Two Standards:    Dismissal and Rule 37(c)(1) Witness Preclusion

### A.    The Dismissal Standard

Dismissal with prejudice is different from other sanctions. Benitez-Garcia, 468 F.3d at 4 (describing dismissal as "the harshest sanction"); Ortiz-Anglada v. Ortiz-Perez, 183 F.3d 65, 67 (1st Cir. 1999) (describing dismissal with prejudice for failure to prosecute as "drastic"); Velazquez-Rivera v. Sea-Land Serv., Inc., 920 F.2d 1072, 1075-76 (1st Cir. 1990) (describing dismissal as "the most severe sanction"). A district court is allowed to employ dismissal as a sanction "only when a plaintiff's misconduct is extreme." Young, 330 F.3d at 81. Dismissal as a sanction is "reserved for cases of 'extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating

-21-

circumstances.'" <u>Benitez-Garcia,</u> 468 F.3d at 4 (quoting <u>Cosme Nieves v. Deshler,</u> 826 F.2d 1, 2 (1st Cir. 1987)). Concerns of fairness underlie this heightened standard, since the law favors "disposition on the merits," <u>Ortiz-Anglada</u>, 183 F.3d at 66-67, and the non-compliant party should be given "notice and an opportunity to be heard." <u>Benitez-Garcia</u>, 468 F.3d at 5. Further, "where the case is close, courts should prefer less severe sanctions that preserve the possibility of disposition on the merits." <u>Pomales v. Celulares Telefonica, Inc.,</u> 342 F.3d 44, 48 (1st Cir. 2003).

### B.      The Rule 37(c) Sanction Standard

The imposition of a lesser sanction under Rule 37(c), such as witness preclusion, is not held to the high dismissal standard and does not require egregious and repetitive misconduct. Instead, Rule 37(c)(1) "requires the near automatic exclusion of Rule 26 information that is not timely disclosed." <u>Wilson v. Bradlees of New England, Inc.,</u> 250 F.3d 10, 20-21 (1st Cir. 2001). Though the automatic nature of the preclusion sanction is softened by the <u>Macaulay</u> factors, witness preclusion is not held to the rigorous standards of dismissal. See <u>Macaulay</u>, 321 F.3d at 51 (listing as factors the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, the opponent's ability to overcome its adverse effects (such as surprise and prejudice), and court docket considerations).

-22-

## C.    Leading to Dismissal

This case touches on which standard applies when the sanction of witness preclusion ultimately results in dismissal. My view is that the Rule 37(c)(1) standard applies, not the dismissal standard or something in between.

## II.    Rule 37(c)(1)

### A.    Automatic Exclusion as the Sanction in the Ordinary Case

Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). Esposito violated his obligation to disclose his expert testimony first and on time as required both by Rule 26(a)(2)(C) and by the court order in this case.[3]   In precluding Esposito's expert, the district court imposed the "automatic sanction" of exclusion. Fed. R. Civ. P. 26 advisory committee's note, 1993 amendments (stating that "[p]aragraph (1) prevents a party from using as evidence any witnesses or

---

[3] Rule 26(a)(2)(C) states that "[a] party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(C). Esposito was required under the terms of the April 16, 2007 Court Order to make his expert disclosures by June 21, 2007 and to make his disclosures before the defendants made theirs. Esposito violated both Rule and the Order.

information that, without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1). This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56."); Santiago-Diaz, 456 F.3d at 276 (stating that "[t]he baseline rule is that 'the required sanction in the ordinary case is mandatory preclusion'" (quoting Lohnes v. Level 3 Commc'ns, Inc., 272 F.3d 49, 60 (1st Cir. 2001))). Here, by excluding the expert's testimony, the district court imposed the "mandatory preclusion" sanction that the Rule, the advisory committee, and this circuit contemplate will be imposed in the "ordinary case." Santiago-Diaz, 456 F.3d at 276. I find it difficult to conclude that the district judge abused his discretion in doing so.

### B. Exceptions to the Automatic Sanction of Exclusion

Rule 37(c) allows for exceptions to the automatic sanction of exclusion when the party's failure to comply is "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). Here, neither exception applies.

### 1. Substantial Justification

There was no justification at all, much less a substantial one, for Esposito's failure to timely disclose his expert. Esposito's attorney ultimately conceded that the failure

to comply with express terms of both Rule 26(a) and the court scheduling order was no one's fault but his own.

## 2. **Harmless**

Examples of "harmless" late disclosure under Rule 37(c)(1) in the advisory committee notes suggest that the "harmless" component has limited application, and the failure to make a timely and complete expert disclosure does not fit.[4] The district court identified two types of harm caused by Esposito's failure to disclose: (1) Harm specific to the defendants in this case, and (2) harm to future defendants and efficient court administration. Standing alone, each would justify the exclusion sanction; taken together, the two factors demonstrate that late disclosure here was not harmless and the district judge's decision not an abuse of discretion.

The district court's first concern was the impact on the

---

[4] The Advisory Committee observed:

> Limiting the automatic sanction to violations "without substantial justification," coupled with the exception for violations that are "harmless" is needed to avoid unduly harsh penalties in a variety of situations, e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures.

Fed. R. Civ. P. 37 advisory committee's note, 1993 amendments.

defendants.  The magistrate judge (whose opinion the district court adopted) observed that if Esposito were permitted to make a belated expert disclosure, defendants would be forced to have their expert review Esposito's expert's report and make new disclosures in response.  Further, the magistrate judge noted that the defendants had filed a motion for summary judgment based on the absence of a plaintiff's expert, and, if the late disclosure were allowed, they would have to file a new summary judgment motion or withdraw the one already filed.

Implicit in these concerns is the effect of Esposito's non-disclosure on the sequential disclosure process mandated by the scheduling order and the resulting unfairness to the defendants. By Esposito's neglect, the party with the burden of proof successfully shifted the burden of disclosure.  This is what the district judge was referring to when he wrote that, if noncompliance with scheduling orders resulted in mere fines or costs, "[p]laintiffs might seek to avoid initial expert disclosure in order to gain unfair advantage in litigation."

The district court's second concern has several angles. First, the district judge was troubled that if Esposito's failure were excused, future plaintiffs, emboldened by the lenient treatment of Esposito, might make a cold-blooded judgment that the advantage of receiving the defense expert's opinions first exceeds the disadvantage of paying court-ordered fines and costs.  The

district judge worried that to some the fines or sanctions might be "a price worth paying."

The district court expressed a related institutional concern that if parties perceive that noncompliance or inattention to deadlines can be ignored, overlooked without significant consequence, or purchased for a price, the court's ability to efficiently manage its docket would be compromised. This is not trivial. The federal rules and local practice are rife with time hurdles, the violation of which can lead to the imposition of a range of the exclusion sanction. This has been a conscious choice by the Rules Committee. As this circuit has recognized, experience has taught that the parties cannot be left to police themselves, and courts routinely impose and enforce deadlines to bring complex federal cases to fruition. The federal bar is acutely aware of the certainty of exclusion, and the lawyers proceed accordingly. A deadline without a sanction severe enough to cause compliance is not a deadline at all; it is a suggestion. See Macaulay, 321 F.3d at 51 (stating that "trial judges must work a complicated equation, balancing fairness to the parties with the need to manage crowded dockets").

In this context, the district court expressed concern that the failure to exclude in this case would lead others to seize upon the benevolence of the district court to gain unwarranted strategic advantages, as happened here, by forcing the defense to

disclose its experts first. This type of consideration is, as this circuit has repeatedly recognized, a legitimate concern for the district court. Young, 330 F.3d at 83 (observing that deterrence of others from similar misconduct is a proper purpose for a district judge fashioning a sanction); Macaulay, 321 F.3d at 51 (discussing the district judge's right to consider the impact of the sanction on the court's docket); Tower Ventures, Inc., 296 F.3d at 46 (stating that "the court's efforts at stewardship are undermined where, as here, a party cavalierly flouts the court's scheduling orders").

## C. First Circuit Authority

There is a decade of First Circuit authority that supports the exclusion of an expert if a party fails to make a timely disclosure. See Boston Gas Co. v. Century Indem. Co., 529 F.3d 8, 18 (1st Cir. 2008); Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 26-27 (1st Cir. 2006); Santiago-Diaz, 456 F.3d at 276; Gagnon, 437 F.3d at 191; Primus, 389 F.3d at 234-36; Young, 330 F.3d at 81-83; McCaulay, 321 F.3d at 50-53; Tower Ventures, 296 F.3d at 46; Lohnes, 272 F.3d at 59-61; Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia, 248 F.3d 29, 33-36 (1st Cir. 2001); Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998). District courts in this circuit have routinely followed suit. See Alves v. Mazda Motors of America, Inc., 448 F. Supp. 2d 285, 293-97 (D. Mass. 2006); Peterson v. Scotia Prince Cruises, Ltd., 222

-28-

F.R.D. 216, 217-18 (D. Me. 2004). I concede that each case stands on its own facts and each can be distinguished in sometimes subtle and sometimes significant ways, but up to now the consistent message from this circuit has been that the trial bar must comply with expert designation orders or face the likelihood that the expert witness will be excluded.

### D. **The Decision to Exclude**

The district judge's decision to exclude a late-designated expert would ordinarily pass as an unremarkable and expected exercise of judicial discretion. The district judge issued a thoughtful written opinion, discussed the sanctioning alternatives, and elected, for clearly-stated and permissible reasons, to impose the sanction of exclusion.

## III. **The Sanction's Result**

What makes this case different than a garden variety imposition of the automatic sanction of exclusion? It must be the harshness of the result: The district court entered summary judgment against a person who sustained a serious physical injury while using the defendants' product.

### A. **A New Dismissal Standard**

The majority seems to impose a new two-part analysis before a district court may order a sanction that later leads to dismissal: First, the district court must consider the traditional Rule 37(c) Macaulay factors; second, the district court must

compare the violation at issue with conduct that had previously justified dismissal.[5]  The majority thus grafts the dismissal standard onto the traditional 37(c) rubric.  In effect, the majority reads a bifurcated sanction standard into Rule 37(c):  For sanctions not leading to dismissal, the Rule 37(c) discretionary standard as elaborated by Macauley applies; for Rule 37(c) sanctions leading to dismissal, the higher dismissal standard applies.

### B.    Rule 37(c) Sanction Resulting in Dismissal

There are good reasons not to adopt a rule that the higher dismissal standard should apply when a district court imposes a lesser sanction that can over time lead to dismissal. The most convincing is that the dispositive impact is not always obvious when the sanction is imposed.[6]  In countless cases,

---

[5]  Ironically, the majority introduces this standard in reversing the district judge, who applied the same two-step analysis that the majority now proposes.  The district judge considered all the Rule 37(c) factors and went on to evaluate the case under the dismissal standard, expressly discussing Young and Tower Ventures.  At the same time, I agree with the majority that if the higher dismissal standard applies, it would be difficult to affirm the district court, since there is no evidence in this record of Young or Tower Ventures levels of misconduct.

[6] A sanctioning court is often not in a good position to predict such consequences.  Here, although both parties and the district judge correctly predicted that preclusion was tantamount to dismissal, it is not inconceivable that Esposito could have asserted the malfunction theory to avoid summary judgment.  See Walker v. General Elec. Co., 968 F.2d 120 (1st Cir. 1992); Canning v. Broan-Nutone, LLC, No. 05-15, 2007 WL 1112355, at *16-17 (D.Me. March 30, 2007) (recognizing the applicability of *res ipsa loquitur* in the product liability context).  The point is not that Esposito erred in failing to assert the malfunction theory as a defense (it

-30-

seemingly lesser sanctions turn out to be the functional equivalent to dismissal under a different guise. Exclusion of a document, restriction of the scope of a deposition, striking a late-disclosed lay witness's testimony—all may seem non-dispositive at the time. However, when the dispositive motion is filed or as the trial proceeds, the sanction may prove to have been decisive. The district judge who at the time of imposition thinks the sanction is relatively lenient may have instead condemned the violator to the time and expense of a losing trial. Even the imposition of a monetary sanction for a party without resources can be the featherweight that tips the scales and forces an unfavorable settlement. The point is that the imposition of a sanction must be evaluated based on the standards applicable to the sanction itself, not to its range of potential consequences. Otherwise, in addition to evaluating and punishing the conduct that precipitated the sanction, the district judge will be required to assess its overall impact on the parties and the case itself, an assessment the district judge is unlikely to be able to accurately make at the time. If the district court's prediction that the sanction will be

---

was likely inapplicable), but that, when he imposed the sanction, the district judge may have incorrectly assumed exclusion would automatically lead to dismissal. If the higher dismissal standard is applied to a Rule 37(c) sanction, the court will avoid imposing a sanction that could lead to dismissal unless the circumstances are egregious. If the court has guessed wrong and the exclusion would not have led to dismissal, the offending party will have avoided exclusion under a more forgiving standard than Rule 37(c) contemplates.

less than dispositive turns out to be inaccurate, it may well lead to a retrospective appellate determination that the district court should have applied a higher dismissal standard and that it abused its discretion, not for imposing the sanction, but for failing to accurately predict its effect.

I acknowledge that a policy argument can be made that there should be a different standard for Rule 37(c) cases, such as this one, where "all parties acknowledged that the sanction carried the force of a dismissal." But the language of Rule 37(c) does not suggest a separate standard for the narrow band of cases where the district judge is reasonably certain the sanction will end up causing a dismissal, and to date the First Circuit has not carved out such an exception.

To be clear, I have no quarrel with the proposition that the district court should take into consideration the likely consequence of a sanction, at least when the judge concludes that the consequence is obvious. The Macauley factors include "the proponent's need for the challenged evidence," 321 F.3d at 51, and the likelihood that the proponent's case will fail should be considered under this factor. But here the district judge did just that. In any event, I do not agree that the likelihood of dismissal should transform a judge's discretionary imposition of the usual sanction into an abuse of that discretion or, put another way, that under Macauley, the prospect of dismissal trumps the

other factors and elevates the usual sanction into a dismissal analysis requiring egregious conduct.

IV.  **Consequences**

I worry that the majority's opinion will leave district judges at sea as to when they are authorized to impose a sanction if it leads or could lead to dismissal.  Ironically, under the majority's formulation, the sanction of exclusion will end up being applied only when it does not really matter and not imposed when it does.

It would seem the obverse should be the case:  If the witness is critical, the proponent has a compelling incentive to comply with the deadlines precisely because the exclusion will mean more.  In the long run, I believe the imposition of dismissal standards on sanctions leading to dismissal will prove unfortunate. Young, 330 F.3d at 83 ("Sanctions are often intended to do more than calibrate the scales between a particular plaintiff and a particular defendant.  One principle purpose is to deter others from similar misconduct.").

I am also worried that the majority's decision will be read to extend to thousands of district court sanction decisions that up to now have been viewed as the normal course of business. The failure to timely respond to a motion, the failure to adequately respond to a statement of material fact in a motion for summary judgment, the failure to list an exhibit or witness before

trial, and the myriad of other routine miscues often lead to exclusion or waiver and later can be causally traced to an adverse judgment.  The list goes on and on and is the grist for the district court mill.  In short, district courts routinely impose sanctions, great and small, that lead directly and indirectly to one party winning and the other losing.

I am concerned that the majority's opinion will be cited to force the trial court to back away from imposing what up to now has been the expected sanction and that the lackadaisical will draw heart, the compliant will suffer, and the ability of the district court to manage its docket will be compromised.  To date, district judges have imposed the Rule 37(c)(1) sanction of exclusion with confidence that the appellate court will affirm their exercise of discretion, but from now on, a district court will be wary of excluding evidence that could lead later to judgment against the offending party, unless the violator "engaged in the same level of foot-dragging as was present in Tower Ventures, nor sloughed off a warning from the district court like the plaintiff in Young."  The normal Rule 37(c)(1) sanction of preclusion for failure to designate an expert will become extraordinary, applicable only where the violator has demonstrated a pattern of persistent violation.  This result runs contrary to the Rule's mandate; exclusion becomes the exception, and a lesser sanction the rule. [7]

---

[7] As a practical matter, the appellate court may never know the extent to which this decision causes district judges to avoid the

Finally, the majority states that "a less severe remedy could have easily achieved the same aims as the preclusion of the expert." Preclusion aside, the other Rule 37(c)(1) sanctions are payment of reasonable expenses, informing the jury of the party's failure, any of the orders listed in Rule 37(b)(2)(A)(i)-(vi), or "other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(A)-(C). The orders listed in Rule 37(b)(2)(A)(i)-(vi) are nearly all the equivalent of expert preclusion or more severe. See Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi) (setting forth a range of sanctions, including directing that the matters embraced in the discovery order be established for purposes of the action, prohibiting the disobedient party from supporting or opposing the designated claims or defenses, striking the pleadings in whole or in part, dismissing the action or proceeding in whole or in part, or rendering a default judgment).

The majority implicitly approves a "lesser sanction, such as the imposition of fines or costs" and concludes that "[i]n the absence of a greater conviction that parties will indeed attempt to purchase their way out of discovery compliance as a result of our

_____

automatic sanction of exclusion. Faced with appellate authority stating that, absent a pattern of egregious conduct, witness exclusion will constitute an abuse of discretion if it leads to dismissal, district courts are likely to seek safer ground and impose lesser sanctions. Neither party is likely to appeal such a ruling; the offender will not, and the compliant party will know that the lesser sanction fits squarely within the trial court's broad range of sanctioning discretion.

holding in this case, we are not persuaded that the sanction here was justified." At least as it concerns the danger of compliance being purchased at a price, the correct monetary sanction is an exceedingly tricky question.[8] What quantum of "greater conviction" will be necessary before a trial judge can properly conclude that the parties have attempted "to purchase their way out of discovery compliance"? How does a trial court go about establishing this factor?[9] And, what amount, if any, will effectively deter parties from attempting to purchase their way out of discovery compliance?

It is difficult to know on this record, which is exactly the point. As this circuit has often recognized, the district court, with its more intimate familiarity with the parties, the attorneys, the travel of the case, the court docket, and other factors, is in a far better position to make this judgment. Here, the district judge considered the imposition of a monetary sanction and concluded no amount would work because a fine or costs would "send the message that noncompliance or inattention to deadlines can be purchased for a price." Instead, he made the difficult, case specific judgment to exclude, and I conclude that, in doing

---

[8] At the same time, I concede that more traditional monetary sanction evaluations are not nearly as difficult to calculate, and district courts are fully capable of assessing attorney's fees and costs for the rippling impact of late expert disclosure.

[9] As Rule 37(c) provides exclusion as the automatic sanction, it would seem that the burden to convince the trial court not to impose the sanction of exclusion – and that offending parties are not attempting to purchase their way out of discovery compliance – should rest with the offenders, not with the compliant party or the trial court.

so, the district judge acted within the scope of his authorized discretion.