**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 01-31251

_____

MALCOLM GILLIS; GEORGE MOWBRAY; MICHAEL MILLER;
STEVE NELSON; FRANK JEWELL; BRETT PALMER; ARTHUR
HALLAM; CHUCK MORRISON; KEVIN MAY; JOHN HARRIS;
LAKE CHARLES PILOTS INC,

Plaintiffs-Appellants,

versus

STATE OF LOUISIANA; BOARD OF RIVER PORT PILOT
COMMISSIONERS AND EXAMINERS; CITGO PETROLEUM
CORP; CONOCO INC; LAKE CHARLES HARBOR & TERMINAL
DISTRICT,

Defendants-Appellees.

Appeal from the United States District Court
For the Western District of Louisiana

July 2, 2002

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The Lake Charles Pilots, Inc. and its individual state-commissioned river pilot shareholders

("the Pilots") appeal the district court's grant of summary judgment in favor of the State of Louisiana

and the other defendants (collectively, "the Defendants") in their declaratory judgment action.[1]

Specifically, the Pilots contend that the district court should have ruled that the State of Louisiana has no authority to regulate pilotage on the portion of the Calcasieu Ship Channel that lies more than three miles seaward of the state's coastline. The Pilots also appeal the district court's denial of their motion to remand the case back to state court. Because we find no error in the district court's opinion, we affirm. We also affirm the district court's denial of the Pilots' motion to remand. Finally, the Pilots' motion to take judicial notice is denied.[2]

The Calcasieu Ship Channel (CSC) is a navigation project maintained by the United States Army Corps of Engineers. It extends from the Port of Lake Charles southward through the Calcasieu River and out into the Gulf of Mexico. It ends at a point approximately thirty-three miles from Louisiana's coastline. Pursuant to 43 U.S.C. § 1312, the seaward boundary of Louisiana is a line three miles from the coastline.[3] The portion of the CSC that lies landward of the three-mile line in Louisiana is known as the "Inner Bar." The approximately thirty miles of the CSC seaward of the three-mile line is known as the "Outer Bar."

The individual plaintiffs in this case are river pilots commissioned by the State of Louisiana

---

[1]The state-commissioned river pilots in this action are Malcolm Gillis, George Mowbray, Michael Miller, Steve Nelson, Frank Jewell, Brett Palmer, Arthur Hallam, Chuck Morrison, Kevin May, and John Harris. In addition to the State of Louisiana, CITGO Petroleum, Lake Charles Harbor and Terminal District, the Board of River Port Pilot Commissioners and Examiners, and Conoco Inc. are also defendants in this case.

[2]The Pilots have also filed a motion asking this court to take judicial notice of *Warner v. Replinger*, 397 F. Supp. 350 (D.R.I. 1975), *aff'd sub nom. Warner v. Dunlap*, 532 F.2d 767 (1st Cir. 1976), and a portion of the record that the district court relied on when deciding that case. The Pilots rely heavily on *Warner* to support their contention that the district court should have made a factual finding as to whether the Outer Bar was a bay, inlet, river, harbor, or port within the meaning of § 8501 in order to determine whether Louisiana has authority to regulate pilotage there. Because we reject this argument, the motion to take judicial notice is denied.

[3]Submerged Lands Act, 43 U.S.C. § 1312 ("The seaward boundary of each original coastal State is approved and confirmed as a line three geographical miles distant from its coast line or, in the case of the Great Lakes, to the international boundary.").

to serve the Port of Lake Charles and the CSC. Under Louisiana law, the Pilots have a duty "to pilot sea-going vessels . . . through navigable streams, channels, rivers, passes and bars within the State of Louisiana and across the bars and passes." La. R.S. 34:1073. Until recently, this provision has generally been accepted to include the Outer Bar. While in the process of considering an increase in pilotage fees in March 2000, however, the Louisiana Public Service Commission made an oral ruling that Louisiana did not have authority to regulate pilotage beyond its three-mile boundary. The Pilots then filed the present declaratory judgment action in Louisiana state court.[4]

In their petition, the Pilots sought the following declarations:

1)      [The Pilots] may not be compelled to provide pilotage services under state commission for any portion of the Calcasieu Bar Channel more than three geographic miles from the coastline of Louisiana, or be punished in any way by the State, any elected State official, any of its statutorily or constitutionally created subdivisions or Boards;

2)      Pilotage or other maritime services provided more than three miles from the Coast of Louisiana is [sic] not performed pursuant to a commission issued by the State of Louisiana, but pursuant to a United States Coast Guard License or endorsements thereto;

3)      The buoy Number 36 on NOAA chart Number 11347 is the furthest point on the Calcasieu Bar Channel subject to jurisdiction from the State of Louisiana; and

4)      The Court renders such other Orders and Decrees to which the petitioners are entitled determining the rights and obligations of petitioners, and for full, general and equitable relief.

Petition for Declaratory Relief at ¶ 8. Defendant CITGO Petroleum then removed the state court action to federal court based on federal question jurisdiction. *See* 28 U.S.C. § 1441(b). The other

---

[4]While this appeal was pending, the Louisiana Supreme Court confirmed that the Louisiana legislature, by enacting La. R.S. 33:1073, intended to regulate pilotage on the Outer Bar. *CITGO Petroleum Corp. v. La. Pub. Serv. Comm'n*, No. 01-CA-1903, 2002 WL 399449 (La. March 15, 2002).

defendants each filed a timely consent to removal.

Thereafter, questions developed regarding whether the consent to removal filed on behalf of one of the defendants, the Board of River Port Pilot Commissioners and Examiners ("the Board"), was formally authorized. The consent was filed by attorney Michael Dees at the informal request of two members of the three-member Board. The Board did not meet formally during the removal period to vote on the consent because of scheduling conflicts allegedly caused by Board Chairman Malcolm Gillis, who is also a plaintiff in this case. After Gillis questioned Dees's authority to file the consent to removal, the Board held a formal meeting to ratify the consent and to make official Dees's status as counsel of record.[5] This meeting took place thirty-nine days after the expiration of the removal period.

The Pilots filed a motion to remand based on a defect in the Board's consent and for lack of federal question jurisdiction (or, alternatively, an absence of complete preemption). The case was referred to a magistrate judge. In his Report and Recommendation, the magistrate judge concluded: (1) that federal question jurisdiction existed because the Pilots' petition for declaratory relief sought an injunction against Louisiana state officials based on the preemptive effect of a federal statute, and (2) that under the "exceptional circumstances doctrine" of *Getty Oil*, the formal but untimely action by the Board to retroactively "ratify" the actions of Dees cured any defect in the consent to removal. *Getty Oil v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1263 n.12 (5th Cir. 1988). The district court denied the motion to remand for the reasons given by the magistrate judge.

The Pilots and the Defendants then filed cross motions for summary judgment. The district

---

[5]Gillis abstained from the vote, leaving the decision to the two Board members who had previously attempted to authorize Dees to file the consent.

-4-

court denied the Pilots' motion for summary judgment and granted the Defendants' motion. The district court held that Louisiana retained its sovereign authority to regulate pilotage of foreign and registry vessels transiting the CSC to and from the Port of Lake Charles on the Outer Bar. In so holding, the district court noted that the waters over the Outer Continental Shelf are relatively shallow for many miles off of the Louisiana coast, and that navigation is restricted there. Under such circumstances, the court held, "it is within the State's authority to protect the ships approaching the CSC from invisible hazards and to control navigation to and from the port through th [sic] regulating of pilotage out to the 33 mile buoy." *Gillis v. Louisiana*, Memorandum Ruling , No. 00-CV-1038 (W.D. La. Sept. 19, 2001). Moreover, the court found no extant federal law or regulation to preempt the State's authority. The Pilots now appeal the district court's grant of summary judgment in favor of the Defendants as well as the district court's denial of their motion to remand the case to state court.

We review a district court's grant of summary judgment de novo. *McClendon v. City of Columbia*, 258 F.3d 432, 435 (5th Cir. 2001). We will affirm a district court's grant of summary judgment when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). We review the denial of a motion to remand de novo. *Hernandez v. Jobe Concrete Prods. Inc.*, 282 F.3d 360, 361 (5th Cir. 2002).

The Pilots first argue that the district court should have remanded this case because the consent to removal filed on behalf of the Board was not properly authorized within the thirty-day

removal period as required by 28 U.S.C. § 1446.[6]  We have previously held that, in order to comply with the requirements of § 1446, all served defendants must join in the removal petition filed prior to the expiration of the removal period . *Getty Oil*, 841 F.2d at 1262 n.9.  This rule simply requires that there be  "some timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect *and to have the authority to do so*, that it has actually consented to such action."  *Id.* at 1262 n.11 (emphasis added).  Because Dees did not technically have the authority to file a consent on behalf of the Board until thirty-nine days after the expiration of the removal period, the Pilots argue that the case should have been remanded.

Assuming *arguendo* that the consent to removal submitted by Dees was not properly authorized prior to the expiration of the removal period and that formal authorization was required, we find the circumstances in this case to be exceptional.  Specifically, we note that the Board attempted to schedule a meeting prior to the expiration of the removal period, that the chairman of the Board was also a plaintiff in the case, that Dees was informally authorized and filed an otherwise proper consent, and that the Board ultimately ratified Dees's conduct.  Based on the unique circumstances of this case, we agree with the district court' s conclusion that the equitable exception stated in *Getty Oil* applies.  *Getty Oil*, 841 F.2d at 1263 n.12 (noting that "[e]xceptional circumstances" might permit removal even when a defendant fails to comply fully with § 1446 within the thirty-day removal period).

The Pilots next argue that this case should have been remanded because federal question

_____

[6]Section 1446(b) of the removal statute states: "The petition for removal of a civil action . . . shall be filed within thirty days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action . . . is based, or within thirty days after . . . the case . . . has become removable."  28 U.S.C. § 1446(b).

jurisdiction, the sole basis for removal, does not exist based on the allegations in their well-pleaded complaint. Specifically, they argue that the district court misconstrued the petition for declaratory relief by reading in a request for injunctive relief based on the preemptive effect of a federal statute. Rather, they argue that, in their petition, they "only sought a declaration of rights between themselves and their statutory masters, the State of Louisiana and its boards and officials, regarding the power of the latter over the Pilots *under extant Louisiana laws of pilotage*." The Pilots also contend that their claims do not involve a federal remedy, the resolution of a substantial federal question, or any other possible hook for federal question jurisdiction.

We find the Pilots' argument that the district court lacked jurisdiction in this case to be without merit. First, contrary to their contention on appeal, the relief sought by the Pilots' petition was not limited to a declaration of "extant Louisiana laws of pilotage." Rather, the Pilots' petition explicitly questions the *legal authority* of the State of Louisiana to regulate pilotage beyond the state's three-mile boundary as set forth in 43 U.S.C. § 1312.[7] In other words, the Pilots argue that, based on § 1312, Louisiana's jurisdiction is limited by its three-mile boundary, unless Congress otherwise provides for state authority in 46 U.S.C. § 8501. *See* 46 U.S.C. § 8501(a) ("Except as otherwise provided in this subtitle, pilots in bays, rivers, harbors, and ports of the United States shall be regulated only in conformity with the laws of the States."). Second, the Pilots' petition on its face seeks more than a declaration of rights—one of the declarations sought is that "they not be compelled to provide pilotage services under state commission for any portion of the Calcasieu Bar Channel

---

[7]*See, e.g.,* Petition for Declaratory Relief ¶¶ 5 & 7 (seeking declaration that the jurisdiction of the State of Louisiana to regulate pilotage ends at the three-mile line); *see also* ¶ 6 ("Questions have arisen relative to whether the State of Louisiana, or any of its officials and boards has the authority as a matter of law to require [the Pilots to provide pilotage services by virtue of the state's commission] at any point seaward of three geographic miles from the actual coastline").

farther than three miles from the Louisiana coast; *nor be punished by the state or state officials* for failing to do the same." Petition at ¶ 7 (emphasis added). In light of the petition's final request—that the court "render such other Orders and Decrees to which the petitioners are entitled determining the rights and obligations of petitioners, *and for full, general and equitable relief*"—the district court did not err in interpreting the petition as requesting an injunction based on federal preemption. Petition at ¶ 7 (emphasis added).

Because the Pilots are implicitly seeking injunctive relief based on a federal statute, federal question jurisdiction clearly exists based on *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983). In *Shaw*, the Supreme Court held:

> A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

*Shaw*, 463 U.S. at 96 n.14. The Supreme Court has subsequently confirmed that this holding is a "general rule," and is not just limited to ERISA cases like *Shaw*. *See Lawrence Cty. v. Lead-Deadwood Sch. Dist. No. 40-1*, 469 U.S. 256, 260 n.6 (1985).[8]

Finally, the Pilots argue that the district court should have ruled in their favor on the merits of their petition. Specifically, the Pilots argue that the federal government has authority over navigation as part of its commerce powers, and that, by enacting the Submerged Lands Act, 43 U.S.C. § 1312, Congress limited the ability of the states to regulate pilotage beyond their three-mile

---

[8]To support their assertion that they only sought declaratory relief in their petition, the Pilots note that not all requests for declaratory relief also seek injunctive relief. Specifically, they note that Louisiana law has a separate provision for affording supplemental relief after a declaration of rights. In addition, they note that *Shaw* itself distinguishes a case where a mere declaration of preemption is sought from a case where a request for a declaration of preemption is coupled with a request for relief. Although the Pilots are correct that it is possible to seek declaratory relief without also seeking injunctive relief, the language of their petition defies such a reading in this case.

seaward boundaries.[9]  After the passage of § 1312, the Pilots suggest that, in order for Louisiana to have authority to regulate pilotage on the Outer Bar, Congress must expressly grant that power.  The Pilots then point to 46 U.S.C. § 8501, in which Congress provided specifically for state regulation of pilotage on certain bodies of water.  Section 8501 states in relevant part that, except as otherwise provided, "pilots in bays, rivers, harbors, and ports of the United States shall be regulated only in conformity with the laws of the States."  46 U.S.C. § 8501(a).  Because the Outer Bar does not constitute a bay, river, harbor, or port, the Pilots contend that Congress has not granted Louisiana authority to regulate pilotage on the Outer Bar.

We are not persuaded by the Pilots' arguments.  First, we disagree with the Pilots' premise that Congress implicitly limited state authority to regulate pilotage to bodies of water within their territorial boundaries when it enacted 43 U.S.C. § 1312.  Section 1312, which is part of the Submerged Lands Act, addresses only who retains title to submerged lands both within and beyond the three-mile line, with particular reference to ownership and exploration of natural resources in the seabed and subsoil.  It does not address the regulation of pilotage on the waters above.[10]

Second, we are not persuaded by the Pilots' contention that § 8501 was designed to limit state

---

[9]*See Gibbons v. Ogden*, 22 U.S. (9 Wheat) 1 (1824) (establishing federal authority over navigation as part of the federal government's commerce power); U.S. CONST. art. I § 8, cl. 3.

[10]The First Circuit in *Warner v. Dunlap*, a case heavily relied upon by the Pilots, rejects the argument that the authority to regulate pilotage is tied to a state's three-mile boundary:

> The issue of a state's territorial limits, *see, e. g., United States v. California*, *supra* and *United States v. Maine*, *supra*, is distinct from that of its right to control navigation. States have been permitted to assert their pilotage regulations at distances considerably greater than three miles from their shores. *See, e. g., Wilson v. McNamee*, 102 U.S. (12 Otto) 572, 573-74, 26 L.Ed. 234, 235 (1881) ("about fifty miles from . . . port"); *The Whistler*, 13 F. 295, 296 (D. Or.1882) ("about 30 miles from the (river) mouth").

532 F.2d at 772.

authority over the regulation of pilotage to the bodies of water specified therein. To begin, we note that Congress has historically left the regulation of pilotage largely in the control of the states. Prior to the ratification of the Constitution, the states regulated pilotage as sovereigns. In its first session, Congress declared its intention to largely leave intact the existing state regulatory schemes by passing the Lighthouse Act of 1789. The Lighthouse Act provided: "Until further provision is made by Congress, all pilots in bays, inlets, rivers, harbors, and ports of the United States shall continue to be regulated in conformity with the existing laws of the States . . . ." Congress has reenacted and recodified this provision several times since 1789, most recently in 1983 when it passed the current version of § 8501.[11] Rather than a limited grant of authority to the states over the specified bodies of water, the statute has been interpreted as an expression of Congress's general intent *not* to limit the power already held by the states unless otherwise provided by Congress.[12] As a result, the Pilots' contention that this provision generally precludes state regulation of pilotage except over "bays, rivers, harbors, and ports" is without merit.

Finally, we reject the Pilots' suggestion that Louisiana's exercise of authority over pilotage on the Outer Bar conflicts generally with federal interests. The Supreme Court has long upheld the authority of states to enact laws regulating pilotage where Congress has declined to act. *See Olsen*

---

[11]*Compare* The Lighthouse Act of 1789 ("Until further provision is made by Congress, all pilots in bays, inlets, rivers, harbors, and ports of the United States shall continue to be regulated in conformity with the existing laws of the States . . . ."), *with* 46 U.S.C. § 8501(a) ("Except as otherwise provided in this subtitle, pilots in bays, rivers, harbors, and ports of the United States shall be regulated only in conformity with the laws of the States.").

[12]The Pilots' argument that state authority under § 8501 depends upon a factual finding that a body of water is a bay, inlet, river, harbor, or port is in tension with at least one Supreme Court case. In *Wilson v. McNamee*, 102 U.S. 572 (1881), the Supreme Court case upheld New York's authority to regulate pilotage 50 miles from its port. Although the Court discussed § 211 (now § 8501), it did not discuss any factual findings with respect to whether the regulation took place on a bay, inlet, river, harbor, or port. Rather, the Court noted in general terms Congress's intent not to disturb existing state regulation of pilotage.

-10-

*v. Smith*, 195 U.S. 332, 341 (1904) ("[A]lthough state laws concerning pilotage are regulations of commerce, 'they fall within that class of powers which may be exercised by the states until Congress has seen fit to act upon the subject.'").[13]  Moreover, there is no real dispute that Louisiana has a legitimate interest in regulating pilotage over the Outer Bar.  As noted by the district court, the State has a significant interest in securing the safety of ships traveling through the CSC to and from the Port of Lake Charles.  As a result, we conclude that the State of Louisiana retains authority to regulate pilotage of foreign and registry vessels on the Outer Bar.

In sum, we hold that Congress has not preempted Louisiana's authority to regulate pilotage on the Outer Bar.  Thus, the district court's grant of summary judgment to the Defendants in this case is AFFIRMED.  The district court's denial of the Pilots' motion to remand is also AFFIRMED.  The Pilots' motion to take judicial notice is DENIED.

---

[13]In addition to arguing federal preemption based on § 8501, the Pilots assert generally that various international treaties and presidential proclamations preclude by implication state regulation of pilotage further than twelve miles from the coast—the breadth of the nation's territorial sea.  This argument, for which the Pilots provide scant legal support, is without merit.