# United States Court of Appeals
## for the Fifth Circuit

_____

No. 22-30261

_____

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2023

Lyle W. Cayce
Clerk

Marquette Transportation Company Gulf-Inland, L.L.C.,

*Plaintiff—Appellee*,

*versus*

Navigation Maritime Bulgare JSC, *incorrectly identified as* Navigation Maritime Bulgarea; Balkan Navigation, Limited,

*Defendants—Appellants/Cross-Appellees*,

*versus*

Robert Johnson,

*Third Party Defendant—Appellee/Cross-Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-10927

_____

Before King, Jones, and Duncan, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

This action arises from a collision between the M/V STRANDJA and the M/V KIEFFER E. BAILEY on the Mississippi River. A jury found that

the owner of the KIEFFER E. BAILEY was not negligent with respect to the collision and awarded that vessel's owner $114,000 damages after finding that the STRANDJA's owner and manager were negligent and that the STRANDJA's river pilot was grossly negligent. The noteworthy holding here is that Louisiana law governs the burden of proof for the pilot's error. Accordingly, we AFFIRM in part, VACATE in part, and REMAND for a new trial as to the M/V STRANDJA and its owners and pilot Johnson.

## I. BACKGROUND

On the morning of January 3, 2019, the STRANDJA was anchored at the New Orleans General Anchorage, which is situated along the western side of the Mississippi River. The ship was facing upstream and was secured by both a port and starboard anchor.[1]

In preparation to return to sea, Captain Robert Johnson, a Louisiana state commissioned river pilot, boarded the vessel as its compulsory pilot. He requested that the STRANDJA's master, Captain Kiril Karapanov, instruct the crew to heave the port anchor. The process of heaving the port anchor at first pulled the ship's bow landward, to port. This landward movement was a natural result of the strain placed on the port anchor's chain during the heaving process. When the port anchor released from the river bottom, the strain shifted to the starboard anchor, which had not yet been raised. This shift in strain caused the bow to change course and begin drifting to starboard, into the middle of the river. As the crew began heaving the starboard anchor, the drift to starboard continued. The ship ultimately drifted approximately 300 feet outside the general anchorage.

---

[1] With the bow as the point of reference, "port" means the left side of the ship and "starboard" means the right.

While the STRANDJA was heaving anchors, the KIEFFER E. BAILEY—an inland tugboat pushing a tow of six loaded barges—was headed downriver.  It was navigating near the center of the river in preparation to pass an oceangoing vessel heading upriver that was approximately two miles downstream.  The tug made multiple radio calls to the vessels in the area indicating its approach and its position in the river.  No one from the STRANDJA responded to these calls or warned the KIEFFER E. BAILEY that the STRANDJA would be drifting into the middle of the river.

As the tug drew closer, it sounded a two-whistle signal, the internationally recognized signal that an approaching vessel intends to alter course to port to accomplish a starboard-to-starboard passing.  On hearing this signal, Captain Johnson expected the tug to do just that—move to port to pass the STRANDJA and avoid a collision.  Neither he nor Pilot Johnson thought the STRANDJA was in a position to avoid the collision itself because the ship's starboard anchor was still on the river bottom.

Nevertheless, when it became apparent that a collision was imminent, both vessels attempted to avoid the collision.  The KIEFFER E. BAILEY steered hard away from the STRANDJA, toward the eastern side of the Mississippi river.  The STRANDJA, for its part, put its engines in reverse.  Despite these efforts, one of the KIEFFER E. BAILEY's barges struck the STRANDJA's bulbous bow (a protrusion below the waterline at the front end of the ship).  The collision damaged the barge and put a hole in the STRANDJA's bulbous bow.

The owner of the KIEFFER E. BAILEY, Marquette Transportation Company Gulf-Inland LLC, brought *in personam* claims against the owner of the STRANDJA, Balkan Navigation Ltd, and the ship's manager, Navigation Maritime Bulgare JSC (together "Balkan"), under the federal court's diversity jurisdiction.  Balkan asserted an *in personam* counterclaim against

Marquette and an *in rem* counterclaim against the KIEFFER E. BAILEY, both of which sounded in the court's admiralty jurisdiction. Marquette then amended its complaint to add *in rem* admiralty claims against the STRANDJA and impleaded Captain Johnson pursuant to Rule 14(c) of the Federal Rules of Civil Procedure.

The case proceeded to a jury trial over Balkan's objections. The jury determined that Marquette was not negligent; found Balkan negligent and Captain Johnson grossly negligent; concluded that Balkan and Captain Johnson were each 50% at fault; awarded Marquette $114,000 in damages; and awarded Balkan $0 in damages. Both Balkan and Captain Johnson appeal that judgment.

## II. DISCUSSION

Captain Johnson and Balkan raise multiple issues on appeal. We conclude that the district court instructed the jury to apply the incorrect standard of proof for the claim against Captain Johnson. This error necessitates vacating the judgments as to Marquette's claims against both Captain Johnson and Balkan, even though we do not find any error in the trial of the claim against Balkan, considered alone. We affirm the judgment that Marquette was not liable for the accident.[2]

### A. Subject Matter Jurisdiction

We begin by assessing subject matter jurisdiction. *See MidCap Media Finance, LLC v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019). Marquette sued Balkan pursuant to the court's diversity jurisdiction. It therefore had the burden to plead each party's citizenship, including its own.

---

[2] Because we affirm the judgment that Marquette was not negligent, we do not reach Balkan's challenge to the jury's zero damages award.

*Whitmire v. Victus, Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000) (citation omitted). As a limited liability company, Marquette was required to plead the citizenship "of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). It failed to do this. It instead asserted only that it "is a Delaware limited liability company, having its principal place of business in Paducah, Kentucky." Marquette's jurisdictional allegations for diversity jurisdiction are therefore inadequate.

"Nevertheless, jurisdiction lies." *Ed & Fred Inc. v. Puritan Mar. Ins. U. Corp.*, 506 F.2d 757, 758 (5th Cir. 1975). All parties agree that Marquette's claims against Balkan fall within the court's admiralty jurisdiction as does one of the parties' counterclaims. Given that the claims arise from a collision on the Mississippi River, the parties are right to agree on this point. We thus have jurisdiction to hear this appeal. But on remand for new trial, Marquette will be required to amend its pleadings to state admiralty jurisdiction as the basis for its claims against Balkan. *See* 28 U.S.C. § 1653.

## B. Captain Johnson's Appeal

Captain Johnson contends that the district court erred by determining that general maritime law preempted a Louisiana pilotage law and by admitting an accident reconstruction during trial. The first argument is correct. The second fails.

No. 22-30261

### 1. Preemption

Louisiana law requires any "party seeking to hold a pilot acting under his state commission issued in accordance with this Chapter liable for damages or loss occasioned by the pilot's errors, omissions, fault, or neglect" to "prove by *clear and convincing evidence* that the damages arose from the pilot's gross negligence or willful misconduct." LA. STAT. ANN. § 34:1137 (emphasis added). The district court held that this statute was preempted by general maritime law, which only requires a finding of ordinary negligence by a preponderance of the evidence. *See, e.g.*, *Gavagan v. United States*, 955 F.2d 1016, 1022 (5th Cir. 1992); *see also* 1 Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 5:5 (6th ed. 2022). Captain Johnson and amici curiae[3] argue this was error. We agree.[4]

Judicially crafted general maritime law preempts state laws that "prejudice the characteristic features of the maritime law" or "disrupt the harmony it strives to bring to international and interstate relations." *J. Ray McDermott & Co. v. The Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir. 1972) (en banc); *see also East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864, 106 S. Ct. 2295, 2298–99 (1986). Congress, however, has carved out an exception to this rule: "Except as otherwise provided in this subtitle, pilots in the bays, rivers, harbors, and ports of the United States shall be regulated only in conformity with the laws of the States." 46 U.S.C.

---

[3] Amici are the Crescent River Port Pilots' Association, Inc., the New Orleans and Baton Rouge Steamship Pilots Association, and the Board of River Port Pilot Commissioners for the Port of New Orleans.

[4] Marquette suggests that Captain Johnson forfeited this argument because he failed to make a Rule 50 motion. To the contrary, Rule 51 of the Federal Rules of Civil Procedure only required Captain Johnson to object "on the record, stating distinctly the matter objected to and the grounds for the objection," which Captain Johnson did. *See Garcia-Ascanio v. Spring Indep. Sch. Dist.*, 74 F.4th 305, 308–09 (5th Cir. 2023).

§ 8501(a).   The parties dispute whether LA. STAT. ANN. § 34:1137 falls within this exception.

"Prior to the ratification of the Constitution, the states regulated pilotage as sovereigns." *Gillis v. Louisiana*, 294 F.3d 755, 761 (5th Cir. 2002). The First Congress codified this power in the Lighthouse Act of 1789. *Id.* That statute has since been reenacted and recodified, most recently in Section 8501. *Id.* We have thus interpreted the statute "as an expression of Congress's general intent *not* to limit the power already held by the states unless otherwise provided by Congress." *Id.* (emphasis in original).

It is not in doubt that a state at the time of ratification could have passed a law regulating pilots' liability.   No federal statute currently precludes such a regulation.   And as amici explain, the limitation of pilots' liability serves as an essential cog in Louisiana's comprehensive pilotage regulatory system. *See* LA. STAT. ANN. tit. 34, ch. 6.   Louisiana is also not alone in this regard.   Other states include similar liability-limiting provisions in their pilotage regulatory systems. *See, e.g.*, ALASKA STAT. § 08.62.165 (liability cap in negligence actions); ME. STAT tit. 38, § 99-A (same); S.C. CODE ANN. § 54-15-350 (same); TEX. TRANSP. CODE § 66.083 (same); WASH. REV. CODE § 88.16.118 (same); *see also* 2 Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 13:2 ("All the states bordering on the sea have laws establishing a comprehensive pilotage regulatory system."). We therefore have no difficulty in holding that this Louisiana law falls within the state's broad power to regulate pilotage. *See* LA. STAT. ANN. § 34:1137.

The cases cited by Marquette are not to the contrary.   In *Garrett v. Moore-McCormack Co.*, a seaman who had executed a release of liability brought a Jones Act personal injury claim in state court. 317 U.S. 239, 240–41, 63 S. Ct. 246, 248–49 (1942).   The state court, in assessing the validity of the release, applied a "clear, precise, and indubitable evidence" standard. *Id.*

at 242, 249.  The Supreme Court reversed, as it held that the Jones Act's "uniformity requirement extends to the type of proof necessary for judgment."  *Id.*  No such uniformity requirement exists as to pilotage regulations.  Congress instead has left this area in the states' capable hands.  46 U.S.C. § 8501(a); *see also* 2 Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 13:1 (noting the "irregular pattern of [pilotage] regulation" created by Congress's deference to state law).

*In re Exxon Valdez*, 270 F.3d 1215 (9th Cir. 2001), is also inapposite.  That was a general maritime tort case; it did not address the scope of Section 8501 or involve a state statute regulating pilotage.  Exxon argued "for a clear and convincing standard on various policy grounds."  *Id.* at 1232.  In the absence of statutory authority or precedent, the court rejected Exxon's arguments.  *Id.*  Here, in contrast, Louisiana law expressly provides for the application of the clear and convincing evidence standard in actions against pilots.  LA. STAT. ANN. § 34:1137.

In sum, the district court incorrectly concluded that general maritime law preempted the burden of proof and the applicable negligence standard in LA. STAT. ANN. § 34:1137.  The court therefore abused its discretion in instructing the jury that Marquette had the burden to prove gross negligence against Captain Johnson by only a preponderance of the evidence.  *See EMJ Corp. v. Hudson Specialty Ins. Co.*, 833 F.3d 544, 550 (5th Cir. 2016).  And in light of the contradictory evidence in the record, regarding the actions of STRANDJA and the pilot leading up to the collision, we cannot say that applying the lower standard of proof to Johnson's conduct in the jury interrogatory was harmless.  *See Puga v. RCX Sols., Inc.*, 922 F.3d 285, 291–92 (5th Cir. 2019); *see also Gardner v. Wilkinson*, 643 F.2d 1135, 1137 (5th Cir. 1981).  We must vacate the judgment against Captain Johnson and remand for a new trial.

No. 22-30261

## *2. Reconstruction testimony*

Captain Johnson also challenges the admission of the accident reconstruction prepared by Marquette's witness, Steven Cunningham, in addition to the lay testimony Cunningham offered to authenticate the reconstruction.  He argues (1) that the reconstruction was not properly authenticated, (2) that Cunningham testified as an expert and was therefore required to provide an expert report, and (3) that the reconstruction was not admissible as summary evidence.[5]

Marquette argues that Captain Johnson did not properly preserve these issues for appeal.  This is true, but only to an extent.  Before trial, Balkan filed a motion in limine seeking exclusion of the reconstruction.  It argued in the motion that exclusion was appropriate because the reconstruction (1) was not authenticated, (2) was inaccurate and misleading due to certain self-serving captions, (3) was not timely disclosed, and (4) could not be admitted without expert testimony.  In a pretrial filing of his own, Captain Johnson incorporated the arguments from Balkan's motion, which was later granted in part.[6]  The objections were also renewed in a proposed pretrial order that Captain Johnson and Balkan submitted jointly.  In a separate pretrial filing, Captain Johnson objected to use of the reconstruction as a demonstrative,

---

[5] The reconstruction compiled by Cunningham consisted of three data sources:  the STRANDJA's Voyage Data Recorder; the KIEFFER E. BAILEY's Rose Point Data; and Automatic Identification System data to verify the first two sources.  Cunningham plotted these data onto Google Earth, synchronizing the sources as well as an overlay from the STRANDJA's audio.  Cunningham also purported to confirm the reconstruction's accuracy using radar images.

[6] The district court ordered Marquette to remove the misleading captions and to authenticate the reconstruction by calling the individual who prepared it (Cunningham).  It otherwise determined that the failure to timely disclose the reconstruction was harmless and that no expert testimony was required.

this time not only incorporating but also summarizing the arguments from Balkan's motion in limine.

A "pre-trial objection is sufficient to preserve [an evidentiary] error for appellate review." *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002). Captain Johnson's pretrial objections preserved the arguments contained in Balkan's motion in limine concerning authentication and expert testimony. But neither he nor Balkan argued below that the reconstruction was inadmissible summary evidence. That argument thus was not preserved for appeal.

As to the preserved arguments, this court reviews a trial court's evidentiary rulings for abuse of discretion. "Evidentiary rulings, however, are also subject to harmless error review, so even if a district court has abused its discretion, we will not reverse unless the error affected the substantial rights of the parties." *Mahmoud v. De Moss Owners Ass'n, Inc.*, 865 F.3d 322, 327 (5th Cir. 2017) (internal quotation marks omitted).

Captain Johnson first argues that Cunningham's testimony did not adequately establish the reliability and accuracy of the process by which Cunningham created the accident reconstruction. *See* Fed. R. Evid. 901(b)(9). He also contends that Marquette was required to authenticate the reconstruction with expert testimony, which would require the filing of a pre-trial expert report.

Although the admission of the reconstruction raises important issues concerning the necessity for expert testimony, *see Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996) ("[A] person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person."), any error by the district court in this respect was harmless. Neither Balkan nor Captain Johnson argued at or before trial that the reconstruction depicted the collision

inaccurately or that the data used to develop it were unreliable. In fact, Captain Johnson played the reconstruction video during his closing argument and used it to make substantive arguments to the jury. He also encouraged the jury to review the reconstruction during deliberations. Captain Johnson thus cannot plausibly argue on appeal that admission of the reconstruction affected his substantial rights.

The reconstruction issue will likely resurface when Marquette retries its claim against Captain Johnson. If it does, the district court should carefully consider whether it would be more appropriate for Cunningham to testify as an expert witness for purposes of authentication and offering an expert report pretrial.

## C. Balkan's Appeal

Balkan contends that this case should not have been tried to a jury, that the evidence was insufficient to support the jury's findings, and that the district court erroneously limited the testimony of Balkan's expert.[7] Each argument falls flat. Even so, we conclude that the claim against Balkan must be retried because of the error concerning the standard of proof for the claim against Captain Johnson.

### 1. Jury trial

Balkan first contends that the district court erred in trying this case to a jury where the only basis for jurisdiction was admiralty. This attempt to shoehorn a belated jurisdictional attack into a challenge to the district court's

---

[7] Balkan belatedly attempted to join Captain Johnson's appeal as to whether the district court properly admitted the testimony of Cunningham with respect to the reconstruction. As Balkan did not address this argument in its opening brief or expound upon it in either of its reply briefs, it is forfeited. *See SEC v. Hallam*, 42 F.4th 316, 327 (5th Cir. 2022).

employment of a jury is unavailing.  Balkan moved to strike the jury demand two years before trial.  Balkan did not argue in that motion that diversity of citizenship was lacking.  It argued only that the amount-in-controversy requirement was not met and that, even if it was, Marquette had impliedly elected to proceed in admiralty based on the third-party demands it made in admiralty.  Only on appeal does Balkan argue that the district court erred in denying the motion to strike because the absence of diversity deprived the court of a non-admiralty basis to hear the claims.  Balkan forfeited this argument by not raising it below. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

Even if it did not forfeit the argument, Balkan does not have a constitutional right to a non-jury trial.  *See Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 20, 83 S. Ct. 1646, 1650 (1963) ("While this Court has held that the Seventh Amendment does not require jury trials in admiralty cases, neither that Amendment nor any other provision of the Constitution forbids them."); *accord* Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2317.  Nor has Balkan argued how trial by jury adversely affected its substantial rights.  Any error is therefore harmless.  *See* 28 U.S.C. § 2111.

### *2. Evidentiary sufficiency*

Balkan next argues that the jury erred in (1) finding that Marquette was not negligent and (2) awarding Marquette $114,000 in damages.  Marquette responds that Balkan forfeited these arguments by failing to move for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure.

"[A] party who wishes to appeal on grounds of insufficient evidence must make a Rule 50(b) motion for judgment as a matter of law after the jury's verdict." *Downey v. Strain*, 510 F.3d 534, 543–44 (5th Cir. 2007)

No. 22-30261

(citing *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 400–01, 126 S. Ct. 980, 985–86 (2006)). "A postverdict motion is necessary because '[d]etermination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart.'" *Unitherm*, 546 U.S. at 401, 126 S. Ct. at 985–86 (quoting *Cone v. W.V. Pulp & Paper Co.*, 330 U.S. 212, 216, 67 S. Ct. 752, 755 (1947)) (alteration in original). "[W]e lack power to address a claim not properly raised in a Rule 50(b) motion." *OneBeacon Ins. Co. v. T. Wade Weltch & Assocs.*, 841 F.3d 669, 680 (5th Cir. 2016).

Balkan filed a Rule 50(a) motion at the close of Marquette's case-in-chief, contending that there was insufficient evidence for the jury to find that Balkan was negligent or that Marquette proved its damages. The district court denied that motion, and the record is clear that Balkan did not renew the motion after the jury returned its verdict. Consequently, we "lack power" to address Balkan's sufficiency of the evidence arguments concerning Marquette's negligence claim. *OneBeacon*, 841 F.3d at 680; *see also Thomas v. Hughes*, 27 F.4th 995, 1008 (5th Cir. 2022).[8] In its reply brief, Balkan implicitly concedes that it forfeited its challenge to the jury's award of damages to Marquette on Marquette's negligence claim against it.

Balkan also recognizes that it did not bring a Rule 50 motion as to its negligence counterclaim against Marquette. Marquette argues that, by

---

[8] Some panels have reviewed for plain error even where the appellant failed to bring a Rule 50 motion. *See McLendon v. Big Lots Stores*, 749 F.3d 373, 375 n.2 (5th Cir. 2014) (unpublished) (collecting divergent cases). Even if the clear error standard applies, some evidence supports the jury's conclusion that Marquette sustained $114,000 in damages. *See Flowers*, 247 F.3d at 238; *see also Pizani v. M/V Blossom*, 669 F.2d 1084, 1088 (5th Cir. 1982) ("The plaintiff bears the burden of proof to show the amount, as well as the fact, of damages.").

failing to do so, Balkan forfeited its challenge to the jury's finding that Marquette was not negligent.  There is some support for forfeiture, *see U.S. v. Flintco, Inc.*, 143 F.3d 955, 967–68 (5th Cir. 1998), but we need not address it here.  It is clear from the record that there was sufficient evidence for the jury to conclude that the KIEFFER E. BAILEY acted reasonably under the circumstances and that Marquette was therefore not negligent.  The testimony of two of Marquette's experts, Captain Wayne Wilson and Captain Michael Berry, provided the necessary support.  They testified that the pilot of the KIEFFER E. BAILEY, Captain Nobles, could not have reasonably anticipated that the STRANDJA would leave general anchorage and drift into the navigation stream, especially when the STRANDJA failed to provide notice of its intention to do so.  This testimony supports a conclusion that the distance at which the KIEFFER E. BAILEY passed general anchorage was reasonable.  Captain Berry also testified that Captain Nobles made prudent navigation decisions under the circumstances, including with respect to the speed at which the KIEFFER E. BAILEY was travelling.  This evidence was sufficient to support the jury's finding that Marquette was not negligent.

### *3. Expert testimony*

Balkan asserts that the district court abused its discretion in limiting the testimony of its liability expert, Captain A.J. Gibbs, regarding the lookout rule, the safe-speed rule, and the exchange between Master Karapanov and Captain Johnson about heaving the STRANDJA's anchors ("the master–pilot exchange").

An expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B).  Failure to disclose such an opinion precludes the proffering party from using that information "at a trial, unless the failure was

substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). "A district court enjoys wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless manifestly erroneous." *Johnson v. Thibodaux City*, 887 F.3d 726, 736 (5th Cir. 2018) (internal quotation marks and citation omitted). "Even if we identify an abuse of discretion, the harmless error doctrine applies unless a substantial right of the complaining party was affected." *Id.* (internal quotation marks and citation omitted).

The safe-speed rule requires every vessel to "proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions." 33 C.F.R. § 83.06. The look-out rule requires every vessel to "maintain a proper look-out by sight and hearing" at all times to avoid collision. *Id.* § 83.05. The district court prevented Balkan from questioning Captain Gibbs about these rules after determining that Captain Gibbs's expert report did not express an opinion as to whether the KIEFFER E. BAILEY violated either one of them.

The district court did not abuse its discretion by limiting Captain Gibbs's testimony in this respect. Balkan's argument to the contrary relies on an excerpt of the expert report that, according to Balkan, expressed an opinion that both the safe-speed rule and the lookout rule were violated:

> 1. The Kieffer Bailey's operator failed to provide an independent lookout as prescribed by Rule 5
>
> 2. The Kieffer Bailey failed to comply with 33 CFR 165.810 (b) (2) When passing another vessel in motion, anchored, or tied up, a wharf or other structure liable to damage by collision, suction, or wave action, vessels shall give as much leeway as circumstances permit and reduce their speed sufficiently to preclude damage to the vessel or structure being passed.

. . . .

> The Kieffer Bailey had ample time to . . . to pass at a wider
> distance at a safer speed from the General Anchorage . . . .

In this excerpt, Captain Gibbs did not express an opinion that the safe-speed rule contained in 33 C.F.R. § 83.06 was violated. Although he stated a general opinion that the tug should have been traveling at a safer speed, his only reference to a rule concerning speed was not to § 83.06 but to § 165.810(b), which regulates navigation on a portion of the Mississippi River. Nor did Captain Gibbs unambiguously express an opinion that the KIEFFER E. BAILEY violated the lookout rule. To be sure, his report referred to § 83.05 and said that the KIEFFER E. BAILEY failed to provide "an independent lookout." But that rule does not require an *independent* lookout; it requires a proper lookout. And Captain Gibbs expressed no opinion in his report as to whether the KIEFFER E. BAILEY failed to provide a proper lookout. The decision of the district court to limit Captain Gibbs's testimony on these two rules thus was not an abuse of discretion.

Nor did the district court abuse its discretion with respect to Captain Gibbs's testimony on the adequacy of the master–pilot exchange, *i.e.*, the exchange between Master Karapanov and Captain Johnson before orders were given to heave the STRANDJA's anchors. A line of questioning by Balkan about this exchange drew an objection from Marquette. But following an extended bench conference, Balkan indicated that it had no further questions on the topic. The district court thus did not limit the expert's testimony in any way that could have amounted to an abuse of discretion.

No. 22-30261

### 4. *Retrial*

Despite the above conclusions, the district court's erroneous instruction concerning the standard of proof for the claim against Captain Johnson likely influenced the jury's assessment of liability for the claim against Balkan. At the very least, this error had an impact on the jury's apportionment of fault between Captain Johnson and Balkan. On the other hand, it is not likely that the jury's exoneration of Marquette from negligence was influenced by the erroneous preponderance burden of proof as to Captain Johnson. As a result, we vacate the judgment and remand for a new trial on Marquette's claims against both Balkan and Captain Johnson, but we affirm the adverse judgment on Balkan's counterclaim against Marquette.

## III. CONCLUSION

The judgment of the district court is AFFIRMED as to the finding that Marquette Transportation Company Gulf-Inland LLC was not negligent. The judgment of the district court against Balkan Navigation Ltd. and Navigation Maritime Bulgare JSC and Captain Robert Johnson is VACATED and the case is REMANDED in part for a new trial consistent with this opinion. Marquette is ORDERED, on remand, to amend its complaint within 14 days to allege admiralty jurisdiction as the jurisdictional basis for its claim against Balkan. *See* 28 U.S.C. § 1653.