# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2025

Lyle W. Cayce
Clerk

No. 23-20568

9000 Airport L.L.C.,

*Plaintiff—Appellee*,

*versus*

Comptroller Glenn Hegar,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-3131

Before Southwick, Haynes, and Douglas, *Circuit Judges*.
Per Curiam:[*]

9000 Airport challenges the constitutionality of the Sexually Oriented Business Fee Act.  The district court granted 9000 Airport's motion for preliminary injunction.  The Comptroller appeals, contending that res judicata bars suit.  We agree, so we REVERSE.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-20568

## I.     Factual Background

The Sexually Oriented Business Fee Act imposes a fee on "sexually oriented businesses,"[1] including adult nightclubs like 9000 Airport.  Tex. Bus. & Com. Code § 102.052(a).  The Act has been the subject of many challenges.

In one of those challenges, the Texas Supreme Court rejected the Texas Entertainment Association's claim that the Act unconstitutionally abridges freedom of speech.  *Combs v. Tex. Ent. Ass'n, Inc.*, 347 S.W.3d 277, 279, 288 (Tex. 2011).  The TEA is a trade association for the adult entertainment industry that represents "the legal and economic interests of its members."  *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 504 (5th Cir. 2021).  Its members "consist of forty adult cabaret establishments with over sixty different locations in Texas."  *Id.*

9000 Airport is not explicitly a TEA member.  However, 9000 Airport itself is a part of the "Bucks Wild" chain of seven adult nightclubs, all of which are explicit TEA members, aside from 9000 Airport.  9000 Airport has two co-owners—Curtis Wise and Kevin Richardson.  Wise has an ownership interest in six other Bucks Wild clubs, and Richardson has an ownership interest in two.  Wise and Richardson thus share ownership in two other Bucks Wild clubs, both of which are TEA members.

---

[1] A "sexually oriented business" is defined as "a nightclub, bar, restaurant, or similar commercial enterprise that: (A) provides for an audience of two or more individuals live nude entertainment or live nude performances; and (B) authorizes on-premises consumption of alcoholic beverages."  Tex. Bus. & Com. Code § 102.051(2).

No. 23-20568

Now 9000 Airport sues, asserting that the Act is unconstitutional. The district court granted 9000 Airport's motion for a preliminary injunction. The Comptroller appeals.[2]

## II.    Jurisdiction & Standard of Review

We have jurisdiction because the district court granted a preliminary injunction. 28 U.S.C. § 1292(a)(1); *Ali v. Quarterman*, 607 F.3d 1046, 1048 (5th Cir. 2010). We review de novo whether res judicata applies. *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 570 (5th Cir. 2021).

## III.    Discussion

Res judicata precludes parties from relitigating their claims. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). To determine the preclusive effect of a Texas state-court decision, we apply Texas law. *Cox v. Nueces Cnty.*, 839 F.3d 418, 420–21 (5th Cir. 2016). Under Texas law, res judicata requires "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Id.* (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)).

The first element is satisfied; *Combs* resulted in a final judgment on the merits. Preclusion thus comes down to the second and third elements.

### A. Privity

We assess privity by examining the parties' shared interests. *Amstadt*, 919 S.W.2d at 653. Privity exists when litigants "share an identity of interests

---

[2] The Comptroller moved to stay the injunction pending appeal. A motions panel of this court granted the motion, concluding that the Comptroller was likely to succeed on the merits.

in the basic legal right" at issue. *Id.* We ask whether the TEA and 9000 Airport are in privity. The answer is yes because 9000 Airport is in privity with other Bucks Wild clubs, and those clubs are TEA members.

In making this holding, we first examine whether 9000 Airport, a limited liability company, and its owners are in privity. We conclude that they are. *See Gator Licensing, LLC v. C. Mack*, Nos. 04-10-00610-CV & 04-10-00611-CV, 2011 WL 3502013, at *3 (Tex. App.—San Antonio Aug. 10, 2011, no pet.) ("Because members of a limited liability company are comparable to shareholders of a corporation, it would appear to follow that they are similarly bound by a judgment against and in privity with the company."). This conclusion is consistent with treatment of corporations. In the corporation context, "[g]enerally, a judgment against a corporation is res judicata in a subsequent suit against a stockholder." *Paine v. Sealey*, 956 S.W.2d 803, 807 (Tex. App.—Houston [14th Dist.] 1997, no pet.). We treat LLCs the same as we do corporations for res judicata purposes. *See* Restatement (Second) of Judgments § 61(2) (Am. L. Inst. 1982) ("If under applicable law an unincorporated association is treated as a jural entity distinct from its members, a judgment for or against the association has the same effects with respect to the association and its members as judgment for or against a corporation, as stated in § 59."); *see also Sherman v. Boston*, 486 S.W.3d 88, 94 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (recognizing that an LLC is a legal entity separate from its members). We also treat partnerships similarly. *See Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex. 1977) (holding that a partnership and its members were in privity).

Indeed, the rationale for concluding that owners of an entity are in privity with the entity is likely stronger in the LLC context than in the corporate context, as LLCs are passthrough entities that are usually assessed through their members. *See Marquette Transp. Co. Gulf-Inland, L.L.C. v.*

*Navigation Mar. Bulgare JSC*, 87 F.4th 678, 682 (5th Cir. 2023) (looking at citizenship of LLC members for jurisdictional inquiry rather than principal place of business); *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 731 (Tex. 2020) (explaining that an LLC is a passthrough entity that "creates a waterfall structure whereby taxes pass through [the] [c]ompany and are paid by its members"). In any event, we cannot find a reason to treat them differently than corporations in this context.

Although we have not found a Texas Supreme Court case concluding that an LLC and its members are in privity, we hold that there is sufficient legal support for this conclusion. Other state supreme courts have adopted this approach. *Daz Mgmt., LLC v. Honnen Equip. Co.*, 508 P.3d 84, 93–97 (Utah 2022) (finding LLC member in privity with LLC); *Boone River, LLC v. Miles*, 901–02, 994 N.W.2d 35, 45 (Neb. 2023) ("Homebuyers is the sole corporate member of [plaintiff LLC], which raises the specter that those two entities were in privity . . . ."), *opinion modified on other grounds*, 315 Neb. 413, 996 N.W.2d 629 (2023). Assessing privity through 9000 Airport's owners, we conclude that 9000 Airport is in privity with other Bucks Wild clubs owned by Wise and Richardson.

Another way to look at the privity analysis is that 9000 Airport is in privity with other Bucks Wild clubs given their interconnectedness. *See Reliance Capital, Inc. v. G.R. Hmaidan, Inc.*, No. 14-07-01059-CV, 2009 WL 1325441, at *3–4 (Tex. App.—Houston [14th Dist.] May 14, 2009, pet. filed) (concluding that entities with "high degree of commonality of shareholders, directors, and officers" and "interconnectedness" were in privity). Indeed, companies with common ownership are generally in privity with each other. *See 1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1290 (5th Cir. 1991) (applying federal law and holding that judgment against a company bound a sister company with the same owner); *Gulf Power v. FCC*, 669 F.3d 320, 323 (D.C. Cir. 2012) (concluding that entities with common control and

ownership are in privity). Here, Wise and Richardson share ownership interests in two other Bucks Wild clubs, both of which are TEA members. All of the Bucks Wild clubs are adult nightclubs and have the same interest with respect to the Act. Accordingly, the relationship between the Bucks Wild clubs supports our conclusion. "Any other result would invite endless varieties of manipulation and reward tactical maneuvering designed unfairly to exploit technical nonparty status." *Banco Santander de P.R. v. Lopez-Stubbe* (*In re Colonial Mortg. Bankers Corp.*), 324 F.3d 12, 19 (1st Cir. 2003) (internal quotation marks and citation omitted).

We next examine the relationship between the TEA and its members. A trade association representing the legal rights of its members may bind its members. *See Grossman v. Axelrod*, 466 F. Supp. 770, 774–76 (S.D.N.Y. 1979) (member of trade association bound by judgment in action litigated by trade association), *aff'd*, 646 F.2d 768 (2d Cir. 1981); *Aluminum Co. of Am. v. Admiral Merchs. Motor Freight, Inc.*, 486 F.2d 717, 721 (7th Cir. 1973) (concluding that carriers were "undoubtedly" in privity with other carriers since all carriers were members of the Middlewest Motor Freight Bureau); *see also Sam Fox Publ'g Co. v. United States*, 366 U.S. 683, 692–695 (1961) (holding that an association's consent decree resulting from settlement bound members of the association insofar as members' and association's interests aligned); *id.* at 692 ("It is doubtless true that appellants, through their membership in [the association], are or 'may be' bound by the consent judgment insofar as it deals with the external affairs of the Society . . . ."). The TEA brought *Combs* "representing the interests of [sexually oriented] businesses in Texas." *Combs*, 347 S.W.3d at 279; *see Hegar*, 10 F.4th at 504 (explaining that the TEA represents the legal interests of its members); *cf. City of San Antonio v. Cortes*, 468 S.W.3d 580, 587 (Tex. App.—San Antonio 2015, pet. denied) (concluding that a union and its members are in privity). The TEA's members include all of the Bucks Wild clubs, aside from 9000

Airport. Wise has an ownership interest in six of those TEA members; Richardson has an ownership interest in two. Additionally, Richardson claims TEA membership through companies in which he is an officer, and he has even testified as a corporate representative of the TEA in litigation. *See Valadez v. Paxton*, 553 F. Supp. 3d 387, 393 (W.D. Tex. 2021). The TEA and 9000 Airport thus share an identity of interests in the constitutionality of the Act, and we conclude that they are in privity.

Having held that 9000 Airport and the TEA are in privity, we respond to three arguments raised by the dissenting opinion. The dissenting opinion disagrees with our conclusion, contending that it strings together two steps that are "unprecedented" in Texas case law. On the contrary, there is plenty of legal support for our holding, as discussed above. Although the Texas Supreme Court does not resolve a case with these exact facts, we make our best determination under *Erie*. *See Martinez v. Walgreen Co.*, 935 F.3d 396, 398 (5th Cir. 2019) ("In a diversity case like this one, when no Texas Supreme Court case precisely resolves the legal issue, we must make an *Erie* guess and determine as best we can what the Supreme Court of Texas would decide." (internal quotation marks and citation omitted)). In doing so, we use "the sources of law that the state's highest court would look to, including intermediate state appellate court decisions, the general rule on the issue, decisions from other jurisdictions, and general policy concerns." *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 611 (5th Cir. 2016) (internal quotation marks and citations omitted). Here, that counsels for application of res judicata.

Next, the dissenting opinion invokes *Cooper v. Harris*, 581 U.S. 285 (2017) to support the notion that 9000 Airport must itself be a TEA member for res judicata to bar suit. We respectfully disagree with the dissenting opinion's reading of *Cooper*. In *Cooper*, the state asserted that individual plaintiffs were members of NAACP, meaning that a previous action brought

by NAACP precluded the present case. *Id.* at 296–298. Despite financial contributions to NAACP, the individual plaintiffs testified that they had never joined. *Id.* at 297–298. The district court concluded that the requisite connection was not met on these facts. *Id.* at 298. The Supreme Court held that the district court's conclusion defeats the state's argument for precluding suit. *Id.* Thus, the Court explained that it "need not decide whether the alleged memberships would have supported preclusion if they had been proved." *Id.* The dissenting opinion reads *Cooper* to "suggest[] that without a *direct* membership connection among the plaintiff in the current lawsuit and the association in the original lawsuit, privity does not exist." The problem with the dissenting opinion's reading is that the Court expressly did not reach the issue of whether the alleged membership would have established privity, and the Court certainly did not consider whether direct membership was required. Indeed, in *Cooper*, the state did not advance any other theories of privity aside from direct membership, so the Court did not have the opportunity to opine on other ways privity may be established. Here, the facts and arguments advanced are different. We thus respectfully disagree that *Cooper* impacts the present case.

Finally, the dissenting opinion's assertion that this application of res judicata oversteps the Fourteenth Amendment is incorrect. 9000 Airport's rights and interests are aligned with and represented by the TEA's position in the prior suit, so there is no Fourteenth Amendment issue. *Cf. Richards v. Jefferson County*, 517 U.S. 793, 794 (1996) ("[I]t would violate the Due Process Clause of the Fourteenth Amendment to bind litigants to a judgment rendered in an earlier litigation to which they were not parties and in which they were not adequately represented.").

In sum, through 9000 Airport's members, 9000 Airport is in privity with the TEA.

No. 23-20568

### B.  Claims

We turn next to whether the claims were raised or could have been raised in the first suit.  *Amstadt*, 919 S.W.2d at 652.  In *Combs*, the TEA asserted that the Act unconstitutionally abridges freedom of speech.  347 S.W.3d at 279.  Although 9000 Airport alleges additional bases of constitutional infirmity, those additional bases could have been raised in *Combs*.

9000 Airport contends that its claims are predicated on events that postdate *Combs* because it challenges the recently amended fee increase.  Act of May 24, 2023, 88th Leg., R.S., ch. 190 § 1, 2023 Tex. Sess. Law Serv. ch. 190.  However, the fee increase is immaterial to 9000 Airport's challenge; 9000 Airport's challenge turns on the existence of the fee, not the amount of the fee.  Accordingly, all of 9000 Airport's claims were or could have been raised in *Combs*.  This suit is thus precluded.

## IV.    Conclusion

In sum, we REVERSE the preliminary injunction and remand consistent with this opinion.

No. 23-20568

DANA M. DOUGLAS, *Circuit Judge*, dissenting:

The majority opinion today expands the principle of res judicata by concatenating several novel legal conclusions. Because I disagree with the majority's holding that res judicata precludes 9000 Airport's suit, I respectfully dissent.

## I

The Texas legislature enacted the Sexually Oriented Business Fee Act (the "Act") in 2007, and it went into effect on January 1, 2008. The Act initially required "sexually oriented businesses" to remit a $5 fee for each customer admitted, but it was later amended in September 2023 by House Bill 3345 to double the per-customer fee to $10. To trigger this fee, a business must feature both live nude entertainment and on-premises alcohol consumption. TEX. BUS. & COM. CODE §§ 102.051(2), 102.052(a). The Act defines "nude" as being entirely unclothed or being clothed in a manner that exposes "through less than fully opaque clothing any portion of the breasts below the top of the areola of the breasts, if the person is a female, or any portion of the genitals or buttocks." *Id.* § 102.051(1).

One sexually oriented business, Karpod, Inc., along with the Texas Entertainment Association ("TEA"), filed suit in Texas state court, seeking to declare the Act unconstitutional and enjoin its enforcement. *Tex. Ent. Ass'n, Inc. v. Combs*, No. D-1-GN-07-004179, 2008 WL 2307196 (Tex. Dist. Mar. 28, 2008). Karpod and the TEA specifically alleged that the Act violated the First Amendment of the United States Constitution and the Texas Constitution's requirements for occupation taxes and equal and uniform taxes. After a three-day bench trial, the trial court granted the request for a preliminary injunction and declared that the Act, "while furthering laudable goals," violated the First Amendment and was therefore invalid under both strict and intermediate scrutiny. *Id.* at *1.

10

No. 23-20568

After the State's unsuccessful appeal to the Texas Court of Appeals, which held that the Act was "a content-based differential tax burden on protected speech . . . subject to strict scrutiny," *Combs v. Tex. Ent. Ass'n, Inc.*, 287 S.W.3d 852, 864 (Tex. App. 2009), the case came before the Supreme Court of Texas, *Combs v. Tex. Ent. Ass'n, Inc.*, 347 S.W.3d 277 (Tex. 2011), *cert. denied*, 565 U.S. 1179 (2012). In 2011, that court reversed and remanded the matter to the trial court for consideration of the issues raised by Karpod and the TEA under the Texas Constitution. 347 S.W.3d at 288. As to the First Amendment claim, the Supreme Court of Texas held that the Act was aimed at the secondary effects of nude dancing in the presence of alcohol rather than expression and, thus, the statute was entitled to intermediate scrutiny, which it passed. *Id.*

Following the Supreme Court of Texas's decision in *Combs*, the TEA brought a second constitutional challenge to the Act, this time in federal court. *Texas Ent. Ass'n v. Hegar*, No. 17-CV-594, 2020 WL 10895216 (W.D. Tex. Mar. 6, 2020). That suit concerned what is known as the "Clothing Rule." *See* 34 TEX. ADMIN. CODE § 3.722(a)(1). Promulgated by the Comptroller eight years after the Act, the Clothing Rule amended the Texas Administrative Code to limit the definition of "clothing" under the Act to exclude "[p]aint, latex, wax, gel, foam, film, coatings, and other substances applied to the body in a liquid or semi-liquid state." *Id.* The TEA alleged that the Clothing Rule violated the First Amendment, due process, and equal protection. 2020 WL 10895216, at *1. On appeal, a panel of our court concluded that the Clothing Rule was content based and subject to strict scrutiny because of a lack of evidence in the record demonstrating that it was aimed at secondary effects. *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 512–15 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2852 (2022). Although the case did not involve a challenge to the Act itself, this court nevertheless reiterated, at least in dicta, the district court's acknowledgement that any claim brought by

the TEA involving the Act would have been barred by res judicata in light of *Combs*. *Id.* at 510 (citing *Combs*, 347 S.W.3d at 287–88).

## II

9000 Airport—a limited liability company with two managing members, Curtis Wise and Kevin Richardson—formed in July 2022 for the purpose of opening a new adult nightclub business in Houston. In October 2022, 9000 Airport filed with Texas's Office of the Secretary of State an Assumed Name Certificate, indicating that the LLC intended to do business under the name Bucks Wild Houston South.

Bucks Wild Houston South opened in September 2023. The club features costumed dancers who strip down to nudity and operates as a "BYOB" establishment, allowing customers to bring and drink their own alcohol. 9000 Airport believes it qualifies as a "sexually oriented business" subject to the Act, as amended by House Bill 3345, and therefore must pay the $10 per-customer fee. 9000 Airport filed suit against Texas Comptroller Glenn Hegar in the United States District Court for the Southern District of Texas and moved to enjoin enforcement of House Bill 3345, the Act, and the regulations implementing the Act. 9000 Airport alleged that (1) House Bill 3345, the Act, and its implementing regulations are unconstitutional under the First and Fourteenth Amendments because they are content-based regulations of expression that cannot survive strict or intermediate scrutiny; and (2) the Act and its implementing regulations are unconstitutional under the Fourth and Fourteenth Amendments because they authorize the Comptroller to conduct presumptively unconstitutional warrantless inspections, without probable cause, of records that are required to be maintained by sexually oriented businesses.

No. 23-20568

At a hearing before the district court on 9000 Airport's motion for preliminary injunction, the Comptroller argued, for the first time,[1] that the principle of res judicata bars 9000 Airport's claims. The Comptroller specifically asserted that the Supreme Court of Texas's 2011 ruling in *Combs* precluded 9000 Airport from relitigating the constitutionality of the Act. Although he recognized that 9000 Airport was not a plaintiff in *Combs*, the Comptroller argued that the TEA, as a trade association representing Texas

---

[1] Ordinarily, a party waives a res judicata defense not affirmatively asserted in response to a pleading. *See* FED. R. CIV. P. 8(c); *see also Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986) (citing *Starcraft Co. v. C.J. Heck Co.*, 748 F.2d 982, 990 n. 11 (5th Cir. 1984)). Here, the Comptroller filed a Rule 12(b)(6) motion to dismiss rather than an answer to 9000 Airport's complaint. The Comptroller did not "affirmatively" raise a res judicata defense in that motion, nor did he assert the defense in his opposition to 9000 Airport's motion for preliminary injunction. At most, the Comptroller requested that the court adopt the same holding reached in *Combs* given its "similarit[y]" to the present case. Notably, the Comptroller even acknowledged in his opposition to the preliminary injunction motion that "[t]he only difference between this suit and [*Combs*] is *the parties* and the venue" (emphasis added). Despite recognizing the difference in parties, the Comptroller did not argue in his paper briefs that 9000 Airport should be bound, through privity or otherwise, to the *Combs* judgment under the principle of res judicata. Rather, the Comptroller first asserted the res judicata defense at the motion hearing before the district court. That hearing was held on October 26, 2023, more than two months after 9000 Airport filed its complaint, and twenty days after the Comptroller filed its motion to dismiss.

Despite the Comptroller's delay, this court has held that so long as an affirmative defense like res judicata is raised at a "'pragmatically sufficient time, and the party opposing the defense was not prejudiced in its ability to respond,' . . . a court may hold that the defense was not waived." *United States v. Shanbaum*, 10 F.3d 305, 312 (5th Cir. 1994) (quoting *Lucas*, 807 F.2d at 418). Because the district court gave 9000 Airport the opportunity to respond, after the motion hearing, to the Comptroller's res judicata defense, it is unlikely that 9000 Airport was "prejudiced in its ability to respond." *Cooper v. Bank of N.Y. Mellon*, 713 F. App'x 368, 369 (5th Cir. 2018) (per curiam) (quoting *Shanbaum*, 10 F.3d at 312). Moreover, while 9000 Airport raised a waiver argument during the motion hearing and in its letter brief submitted to the district court, it does not re-assert this argument on appeal. I therefore proceed under the assumption that the Comptroller did not waive this defense.

nightclubs, adequately represented 9000 Airport's interests and, thus, privity existed between the two parties.

The district judge permitted 9000 Airport to submit a letter brief addressing the Comptroller's res judicata defense. In that letter, 9000 Airport argued that res judicata does not apply because (1) it raises new or different claims from those in *Combs*, and (2) it is not in privity with the TEA. As to its first argument, 9000 Airport acknowledged that while it raises a challenge to the "constitutionality of the underlying statutory scheme, [its] challenge is predicated on a law that went into effect on September 1, 2023[,] and imposes a fee in the amount of $10"—*i.e.*, House Bill 3345. It further asserted that its claims include an overbreadth challenge and a Fourth Amendment challenge, neither of which were advanced by the TEA in *Combs*. In response to the Comptroller's attempt to establish privity between 9000 Airport and the TEA, 9000 Airport argued that not only is it not a member of the TEA, but it also was created in July 2022, more than a decade after the *Combs* litigation ended. According to 9000 Airport, a determination that privity exists "would bar any new business from challenging a law based on a lawsuit that it had no part of, and no control over, and which ended years before it came into existence."

The district court ultimately granted 9000 Airport's motion for a preliminary injunction and, in doing so, rejected the Comptroller's res judicata defense. The district court noted that the Comptroller "may have been inspired by" this court's acknowledgement in *Hegar* that res judicata would bar a claim brought by the TEA attacking the Act. But the district court recognized that because *Hegar* did not involve any challenge to the Act itself, any comment on this point was dicta. And regardless, the district court concluded that *Combs* does not preclude 9000 Airport from bringing this lawsuit because it is not the TEA or a member of that association, nor did the

Comptroller persuasively argue that 9000 Airport's interests were adequately represented by the TEA in *Combs*.

## III

Res judicata "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010). In order to prevail on the affirmative defense of res judicata under Texas law,[2] a party must establish each of the following elements: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996) (citing *Tex. Water Rts. Comm'n v. Crow Iron Works*, 582 S.W.2d 768, 771–72 (Tex. 1979)). This case turns on the "identity of parties" element.[3]

"Generally people are not bound by a judgment in a suit to which they were not a party." *Id.* (citing Tex. Civ. Prac. & Rem. Code § 37.006(a)). "The doctrine of res judicata creates an exception to this rule by forbidding a second suit arising out of the same subject matter of an earlier suit by those in privity with the parties to the original suit." *Id.* at 652–53 (citing *Crow Iron Works*, 582 S.W.2d at 771–72). For purposes of res judicata, privity "represents a legal conclusion that the relationship between the one who is a party to the record and the non-party is sufficiently close to afford

---

[2] *See Dotson v. Atl. Specialty Ins. Co.*, 24 F.4th 999, 1002 (5th Cir. 2022) ("Federal courts sitting in diversity apply the [res judicata] law of the forum state.").

[3] The parties do not dispute that *Combs* is a final judgment on the merits. And while 9000 Airport argues that this action raises a new challenge to a new law—namely, House Bill 3345—I agree with the majority's conclusion that the third element is satisfied. *See ante*, at 9.

application of the principle of preclusion." *Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977). Non-parties may be in privity with parties to a lawsuit in at least three ways: "(1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action." *Amstadt*, 919 S.W.2d at 653 (first citing *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex. 1992); and then citing *Benson v. Wanda Petrol. Co.*, 468 S.W.2d 361, 363 (Tex. 1971)).

Here, the Comptroller argues, and the majority agrees, that privity exists because 9000 Airport's interests were adequately represented by the TEA in *Combs*. The majority's ruling requires it to reach several unprecedented conclusions. It first holds that because 9000 Airport is an LLC, the court may look to its members when examining privity. As the majority itself recognizes, the Supreme Court of Texas has not reached such a holding with respect to an LLC. *See ante*, at 5. The majority nevertheless cites to one Texas Court of Appeals decision, which held that shareholders of a corporation may be barred by res judicata from bringing the same claim previously brought by the company in an earlier suit. *See Paine v. Sealey*, 956 S.W.2d 803, 807 (Tex. App. 1997). The same is true, as the majority notes, for a partnership and its members. *See Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex. 1977). Given the structure of an LLC, the majority reasons that this doctrine should likewise extend to LLCs and their members.

Based on this premise, the majority looks to 9000 Airport's managing members, Richardson and Wise, for its privity determination. But Richardson and Wise were not named plaintiffs in the *Combs* suit. Nor were they, in their individual capacities, members of the TEA.[4] So, the majority's

---

[4] As this court and the Supreme Court of Texas recognized, the TEA's membership consists of "businesses," *Hegar*, 10 F.4th at 505; *Combs*, 347 S.W.3d at 279,

conclusion requires a second connection: between Richardson and Wise and their business holdings in other adult nightclubs.  As the majority explains, 9000 Airport's Bucks Wild Houston South club is just one of seven "Bucks Wild" adult nightclubs.  *Ante*, at 2.  Those clubs do business under the names of Bucks Cabaret, Bucks Wild Fort Worth, Bucks Cabaret Fort Worth, Bucks Cabaret Dallas, Bucks Wild Dallas, and Bucks Wild.  Although 9000 Airport itself is not directly affiliated with the six other Bucks Wild clubs, there is some overlap between 9000 Airport's managing members and those clubs.  Specifically, Wise and Richardson share ownership interests in two other Bucks Wild clubs.[5]  Richardson also is an officer of other adult entertainment companies, including 5316 Superior, LLC, and 400 Sam Houston, LLC, which do business as part of the Bucks Wild chain.  Based on these affiliations, the majority ties 9000 Airport, via its members, to the other Bucks Wild clubs.[6]  *See ante*, at 5–6.

---

not the individual owners of those businesses.  Richardson confirms the same in his declaration, noting that the TEA's membership consists of adult cabarets throughout Texas.  Indeed, Richardson claims membership to the TEA only "through the *companies* in which [he] [is] an officer" (emphasis added).

The majority seemingly attempts to tie Richardson directly to the TEA by noting that "he has even testified as a corporate representative of the TEA in litigation."  *Ante*, at 7.  However, the majority does not cite any caselaw suggesting that privity exists among an association and a corporate representative who has testified on its behalf, so the relevance of this fact to its privity determination is unclear.  Moreover, neither Richardson nor Wise have any leadership or management role within the TEA.

[5] Wise has an ownership interest in six of the clubs, while Richardson has an ownership interest in two.

[6] The majority cites one Texas Court of Appeals case to support its position.  *See Reliance Cap., Inc. v. G.R. Hmaidan, Inc.*, No. 14-07-01059-CV, 2009 WL 1325441 (Tex. App. May 14, 2009).  But in that case, the court considered, on motion for summary judgment, substantial evidence "demonstrat[ing] with specificity the interconnectedness of the three entities" alleged to be in privity with each other.  *Id.* at *3.  This included evidence of (1) the "high degree of commonality of shareholders, directors, and officers"; (2) "the interconnectedness of management and operations, particularly in regard to

But again, none of these business entities were named plaintiffs in *Combs*. This then brings us to the last link in the tenuous chain of privity: that a member of an association is precluded from asserting the same claim initially asserted by its affiliate association in a prior suit. One of the plaintiffs in *Combs* was the TEA, "an association representing the interests of [sexually oriented] businesses in Texas." *Combs*, 347 S.W.3d at 279. The TEA's membership includes the adult nightclubs in the Bucks Wild chain, aside from 9000 Airport/Bucks Wild Houston South, as well as the two other LLCs of which Richardson is an officer. So, under the associational privity theory put forth in the majority opinion, these member clubs and other entities are in privity with the TEA itself.

The majority opinion does not cite to a decision from a Texas court applying preclusion by association representation, although at least one Texas Court of Appeals has held that privity exists between a union and its members. *See City of San Antonio v. Cortes*, 468 S.W.3d 580, 587 (Tex. App. 2015); *accord Panza v. Armco Steel Corp.*, 316 F.2d 69, 70 (3d Cir. 1963) (binding union members to judgment in a case where the union was a party because the union "was the duly constituted representative of its members"). Wright and Miller offer some useful commentary on this associational representation issue:

> Preclusion should bar repetitive litigation by the association itself, no matter what members it may identify. Any member

---

matters relating to th[e] case"; and (3) shared primary addresses and attorneys among the businesses. *Id.* at *3–4. Here, the only evidence supporting the majority's conclusion that 9000 Airport and the other Bucks Wild clubs are interconnected for privity purposes is the overlap in ownership and the clubs' having the same generalized and unspecific "interest with respect to the Act." *Ante*, at 6. At this stage of the proceeding, the record lacks the "specificity" needed to find a similar level of commonality and interconnectedness between 9000 Airport and Richardson and Wise's other business ventures. Further factual development could aid this determination. *See infra* note 8.

who actively participated in the first action should also be barred, without insisting on the same degree of involvement that is required by ordinary standards of participation and control. Other members, however, should not be precluded, and . . . the association should remain free to assist litigation by a member who is not precluded. *And care must be taken in determining whether parties in a second action were in fact members of an organization that was a party to the earlier action.*

18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4456 (3d ed.) (emphasis added) (footnotes omitted).

This last point warrants further emphasis. By way of illustration, Wright and Miller cite to the Supreme Court's decision in *Cooper v. Harris*, 581 U.S. 285 (2017). In that case, the North Carolina NAACP and several other civil rights groups brought an action claiming racial gerrymandering in drawing two districts for the United States House of Representatives. *Id.* at 296. After the state trial court ruled against the North Carolina NAACP, two individuals brought the same challenge in federal court. The defendants in the federal case asserted a defense of claim preclusion on the ground that the plaintiffs were members of the plaintiff-organizations in the first suit. *Id.* at 297. According to the defendants, "that connection prevent[ed] the pair from raising anew the questions that the state court previously resolved against those groups." *Id.*

But the defendants in *Cooper* failed to show "that the alleged affiliation really existed." *Id.* One plaintiff paid dues to the national NAACP; the other made a financial contribution to the Mecklenburg County NAACP. *Id.* at 298. Each plaintiff testified that he had never joined any of the groups that were plaintiffs in the first action. *Id.* at 297–98. Based on this record evidence, the district court rejected the claim that they were "something other than independent plaintiffs." *Id.* at 298. The Supreme Court accepted

this finding and concluded that it "need not decide whether the alleged memberships would have supported preclusion if they had been proved." *Id.*

*Cooper* suggests that without a *direct* membership connection among the plaintiff in the current lawsuit and the association in the original lawsuit, privity does not exist. *See id.* In other words, an association does not adequately represent the interests of a non-member. *See* 21A Tracy Bateman et al., *Federal Procedure, Lawyer's Edition* § 51:249 ("Where a representative association has standing to assert the interests *of its members* and is found to have adequately protected those interests, a determination rendered against an association will bar an action *by its members* arising out of the same transaction." (emphases added) (citing *Expert Elec., Inc. v. Levine*, 554 F.2d 1227 (2d Cir. 1977))). The majority recognizes this "members-only" rule as well. *See ante*, at 6 ("A trade association representing the legal rights of its *members* may bind its *members*." (emphasis added)). Yet, despite no showing that 9000 Airport is or ever was a member of the TEA, the majority holds that 9000 Airport and the TEA are in privity. *Ante*, at 7. This conclusion directly conflicts with the majority's own rule statement.

Moreover, 9000 Airport's ties to the TEA are arguably more attenuated than those at issue in *Cooper*. 9000 Airport's sole connection to the TEA is based not on any acts or affiliations of its own, but on the memberships of the LLC's members' other business holdings. And 9000 Airport was not even in existence at the time of the allegedly preclusive decision in *Combs*. *See Coors Brewing Co. v. Mendez-Torres*, 562 F.3d 3, 19–21 (1st Cir. 2009) (holding that plaintiff Coors was not precluded from bringing the same claim that the United States Brewers Association previously brought in Puerto Rico, despite the fact that the Association was a trade organization to which Coors' predecessor belonged, because Coors was "was not even distributing beer in Puerto Rico at that time"). Based on the record before us, I see "no basis for assessing the factual assertions underlying the

[Comptroller's res judicata] argument any differently than the District Court did." *Cooper*, 581 U.S. at 298.

*        *        *

I do not disagree with the reasoning behind each step of the majority's analysis, when considered in isolation. Thus, had Richardson and Wise been named plaintiffs in *Combs*, I would accept that they are in privity with 9000 Airport for res judicata purposes. *See, e.g.*, *Remy Enter. Grp., LLC v. Davis*, 37 F. Supp. 3d 30, 38 n.8 (D.D.C. 2014) (holding that privity exists between LLC and its sole member for res judicata purposes); *Daz Mgmt., LLC v. Honnen Equip. Co.*, 508 P.3d 84, 95–97 (Utah 2022) (same); *but see In re Metro. Mortg. & Sec. Co., Inc.*, No. 04-00757-W11, 2008 WL 1744686, at *6 (Bankr. E.D. Wash. Apr. 11, 2008) (declining to hold that privity existed between an LLC and its member even though the member might have influenced the actions of the LLC because "to hold each member of an LLC as a party in privity for claim preclusion purposes would destroy the separate legal nature of the LLC").

Likewise, had the two other nightclubs in the Bucks Wild chain that Richardson and Wise share ownership interests in been named plaintiffs in *Combs*, I again could fathom the existence of privity despite the lack of binding Texas authority holding as much. *See 1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1290 (5th Cir. 1991) (applying federal law and holding that a judgment against a company bound a sister company with the same owner); *Gulf Power v. FCC*, 669 F.3d 320, 323 (D.C. Cir. 2012) (concluding that entities with common control and ownership are in privity).

And finally, if 9000 Airport had ever been a member of the TEA, I agree that claim preclusion could, under the right circumstances, bar 9000 Airport from bringing this suit. *See* Wright & Miller, *supra*, § 4456 ("Any member who actively participated in the first action should . . . be barred.");

Tracy Bateman et al., *supra*, § 51:154 ("A judgment against a trade association does not have preclusive effect against a member unless the member authorized the litigation in some way."); *see also Gen. Foods Corp. v. Mass. Dep't of Pub. Health*, 648 F.2d 784, 788 (1st Cir. 1981) (binding member to state court judgment in suit brought by association and holding that "a member of a trade association who finances an action which it brings on behalf of its members impliedly authorizes the trade association to represent him in that action").

In combination, however, the line of reasoning set forth in the majority opinion is far too attenuated. The majority expands the doctrine of res judicata not once, not twice, but *three times* to reach their desired conclusion. To summarize: the majority establishes privity by jumping from 9000 Airport to its members (the first novel proposition), then from its members to their other business holdings (the second novel proposition), and then from those business holdings to an association they are affiliated with (the third novel proposition). This is one step—or several steps—too many.

This court is constrained by 9000 Airport's Fourteenth Amendment due process rights, and it would violate those rights to bind 9000 Airport to the *Combs* judgment when it was neither a party to that suit nor adequately represented by the TEA. *Richards v. Jefferson County*, 517 U.S. 793, 794 (1996); *see also Taylor v. Sturgell*, 553 U.S. 880, 885 (2008) (expressly "disapprov[ing] [of] the doctrine of preclusion by 'virtual representation.'"); *Sw. Airlines Co.*, 546 F.2d at 95 ("Because res judicata denies a non-party his day in court, the due process clauses prevent preclusion when the relationship between the party and non-party becomes too attenuated." (citing *Hansberry v. Lee, 1940*, 311 U.S. 32 (1940))). 9000 Airport cannot be "adequately represented" by an association to which it does not belong. *See Cooper*, 581 U.S. at 298. Indeed, the stated purpose of

the TEA is to "protect the financial interests *of its members*." *Hegar*, 10 F.4th at 502 (emphasis added). 9000 Airport is not one of those members.

Nor could 9000 Airport have participated in the *Combs* suit, as it was not in existence at the time of the allegedly preclusive litigation. *See Coors Brewing Co.*, 562 F.3d at 19–21; *see also Richards*, 517 U.S. at 802 (holding that res judicata did not bar action when plaintiffs in earlier suit did not "provide[] representation sufficient to make up for the fact that petitioners neither participated in, nor had the opportunity to participate in, the [earlier] action" (internal citation omitted)).[7] And while 9000 Airport's managing members own other strip clubs that are members of the TEA, this is not the type of "substantive legal relationship[]" the Supreme Court in *Taylor v. Sturgell* envisioned for purposes of privity. 553 U.S. at 894 & n.8; *see also Lee v. Rogers Agency*, 517 S.W.3d 137, 155 (Tex. Ct. App. 2016) (discussing the impact of *Sturgell* on Texas law governing claim preclusion and privity). Even if 9000 Airport and the TEA share similar interests, this does not establish the "special representational relationship" required for privity. *S. Cent. Bell Tel. Co. v. Alabama*, 526 U.S. 160 (1999) (holding that mere similarity of interests creates no "special representational relationship between the earlier and later plaintiffs" for preclusion purposes); *Richards*, 517 U.S. at 802 (holding that

---

[7] This is not meant to encourage purposeful attempts to circumvent the preclusive effects of an earlier suit. To that end, a party cannot simply form an LLC after it faces an adverse decision and use that LLC to relitigate previously adjudicated claims. That would be a clear misuse of the LLC business structure to evade res judicata. *See* Wright & Miller, *supra*, § 4456 ("It seems clear enough that [an] association should not be able to evade preclusion continually by averring that unidentified members are not bound and bringing successive suits by claiming injury to different identified members."). But there is no evidence that this is what happened here. And, again, I do not disagree with the limited holdings that privity exists between an LLC and its individual members, or between an LLC and another LLC when they possess the requisite level of interconnectedness.

No. 23-20568

litigation by parties with interests similar to those of others does not bar the latter from pursuing their own litigation).

## IV

For these reasons, and based on the record before us,[8] I would hold that privity does not exist, and 9000 Airport's suit is not barred by res judicata. I therefore respectfully dissent.

---

[8] At a minimum, I would hold that the case should be remanded for development of a record that will illuminate the factors bearing upon preclusion by virtual associational representation. *See Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1057 (9th Cir. 2005), *withdrawing and superseding its prior opinion*, 382 F.3d 1025 (9th Cir. 2004) (remanding for same). The district court, during the motion hearing, foreclosed potentially enlightening questioning advanced by defense counsel on the issue of whether the TEA adequately represents the interests of adult nightclubs in Texas.